UNITED STATES *v.* DORAGON CO. ET AL. (No. 2372) [1]

1. CONSTRUCTION, PARAGRAPH 1428, TARIFF ACT OF 1922—KNOWLEDGE OF JUDICIAL DECISIONS IMPUTED TO CONGRESS—CHANGE IN LANGUAGE SIGNIFYING CHANGE IN MEANING—"JEWELRY * * * OF WHATEVER MATERIAL COMPOSED."

Under former tariff acts this court has held—notably in *American Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18, T. D. 36259, and *United States* v. *Mandel Bros.*, 10 Ct. Cust. Appls. 44, T. D. 38294, both under the act of 1913—that "jewelry," in the common acceptation, meant articles worn or used primarily or chiefly for personal adornment, composed of the precious metals or imitations thereof or of precious or semiprecious stones or pearls or imitations thereof, or cameos, coral or amber, including artificial, synthetic or reconstructed pearls or rubies, or other precious stones, strung or set; and that a classification as jewelry of merchandise not composed of any of the foregoing was prima facie erroneous. Paragraph 356, tariff act of 1913, provided for "Jewelry, commonly or commercially, so known," and paragraph 1428, Tariff Act of 1922, adds "finished or unfinished, of whatever material composed."

---

[1] T. D. 41051.

This added language should be given effect; and this is done by holding that Congress, being aware of this court's definition of jewelry stated above, intended to obviate it and legislate that, if an article is such that it would be jewelry if it were not for the material of which it is composed, then it should be classified as jewelry. *United States* v. *Doragon Co. et al.*, 12 Ct. Cust. Appls. 524, T. D. 40732, and *United States* v. *International Forwarding Co.*, 12 Ct. Cust. Appls. 530, T. D. 40733, overruled.

2. JEWELRY—BONE AND IVORY PERSONAL ORNAMENTS.

The collector's classification of necklaces of bone or ivory beads, pendants of bone or ivory, and ivory brooches as jewelry under paragraph 1428, Tariff Act of 1922, is presumptively correct. *United States* v. *Doragon Co. et al.*, 12 Ct. Cust. Appls. 524, T. D. 40732, overruled.

## United States Court of Customs Appeals, July 3, 1925

REHEARING of *United States* v. *Doragon Co. et al.*, 12 Ct. Cust. Appls. 524; T. D. 40732)

[Original opinion modified.]

[Oral reargument May 18, 1925, by Mr. Charles D. Lawrence, special attorney, for the United States]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Eleven shipments of merchandise under the Tariff Act of 1922 are involved here. On the hearing before the Board of General Appraisers, the following stipulation was entered into by counsel:

It is stipulated that the merchandise in the following schedule is of the character stated therein:

Protest 972394, Doragon Co., bone bead necklaces with bone clasps.

Protest 972395, Saji & Kariya Co., bone bead necklaces with bone clasps.

Protest 968908, Yamato, same as above.

Protest 968916, B. H. Dyas Corporation, ivory pendants with pierced hole and ivory roses.

Protest 968920, A. Hamburger's Sons, ivory necklaces with ivory clasps, ivory pendants in form of roses with pierced holes, bone pendants with pierced holes.

Protest 968917, Yamato Co., ivory pendants with pierced holes.

Protest 968922, J. W. Robinson Co., ivory pendants with pierced holes.

Protest 969406, Saji & Kariya Co., bone bead necklaces with bone clasps, and ivory necklaces with ivory clasps.

Protest 968919, S. N. Silberberg, ivory brooches in the form of flowers with small brass pin, ivory pendants in the form of flowers with a small brass ring.

Protest 968921, same importer and same merchandise as above.

Protest 968918, Yamato, ivory pendants with pierced holes, and bone bead necklaces with bone clasps.

It is further stipulated that all of the above merchandise is valued at more than 20 cents per dozen pieces, and designed to be worn on or about the person.

The collector returned the merchandise enumerated in the stipulation as jewelry, under paragraph 1428 of the Tariff Act of 1922, except in the matter of protest 972395, where it was returned for duty at 60 per centum under paragraph 1403 thereof.

The importer protested in each case. As to the bone bead necklaces, they were claimed to be dutiable at 35 per centum under paragraph 1403 as beads, or at 60 per centum under the same paragraph as articles composed wholly or in chief value of beads, or, alternatively, under paragraph 1439 at 25 per centum, or under paragraph 1459 as unenumerated manufactured articles. The ivory articles were claimed to be dutiable at 35 per centum under paragraph 1440 as manufactures of ivory, or at 60 per centum under paragraph 1419 as artificial flowers, or at 45 per centum or 60 per centum under paragraph 1403, as ivory beads, or at 10 per centum or 20 per centum under paragraph 1459 as unenumerated manufactured articles. The bone pendants in protest 968920 were claimed to be dutiable at 25 per centum under paragraph 1439 as manufactures of bone.

The board, upon hearing, overruled protest 972395, and that portion of protest 968918 which deals with bone bead necklaces and sustained the others, holding, in brief, that the bone and ivory necklaces therein referred to were dutiable as strung beads under paragraph 1403 at 60 per centum; that the other ivory ornaments of various kinds were dutiable at 35 per centum under paragraph 1440 as manufactures of ivory; and that the bone pendants were dutiable at 25 per centum under paragraph 1439 as manufactures of bone. Protest 968918 was overruled as to the bone articles involved because no claim was made therein under paragraph 1403. There are no samples in the case.

From this judgment the Government appeals, contending here that the classification of the collector should be sustained, and the merchandise be held dutiable as jewelry under said paragraph 1428.

On this cause coming on for hearing, this court, on March 6, 1925, affirmed the judgment of the court below. Thereafter, on March 23, the court, on its own motion, ordered a rehearing therein. Upon a rehearing we are of the opinion that the conclusion formerly reached by the court is erroneous, for the following reasons:

The collector classified the various articles of importation herein as "jewelry," at 80 per centum under that portion of paragraph 1428 of the Tariff Act of 1922 which is as follows:

1428. Jewelry, commonly or commercially so known, finished or unfinished of whatever material composed, valued above 20 cents per dozen pieces, * * *

The stipulation shows the material of which these articles was composed was bone and ivory. It is therefore contended that the facts shown by the stipulation overcame the presumed correctness of the collector's return, under the doctrine announced in *American Bead Co. v. United States*, 7 Ct. Cust. Appls. 18; in other words, that the materials being bone and ivory, the articles can not be jewelry under the state of this record and must be classified other-

wise. It is conceded by counsel that all the articles involved are ornaments for personal adornment.

Prior to the enactment of the Tariff Act of 1922, the question of what should be held to constitute jewelry was a fruitful source of customs litigation. The varying provisions of successive customs laws brought many cases into the courts, and various judicial attempts were made to interpret the congressional will as expressed in these laws. Such was the condition when the tariff act of October 3, 1913 was enacted. Paragraph 356 of that act provided, in part, as follows:

356. Jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces, * * *

It was thought that some judicial construction must be adopted which would be at once a guide to proper administration by customs officials and at the same time advise importers of the dutiable nature of their merchandise as affected by this paragraph. Therefore, in *American Bead Co.* v. *United States,* 7 Ct. Cust. Appls. 18, decided March 9, 1916, in a well-considered· opinion by De Vries, Judge, this court attempted to define the common meaning to be attached to the word "jewelry." This it did in the following language:

(4) Without attempting a fixed definition of jewelry or to declare a hard and fast line of distinction between these competing paragraphs the recitals therein by Congress, taken in connection with well-known general incidents of jewelry, real and imitation, are notably significant. Jewelry as therein indicated and in the common conception is composed of the precious metals or imitations thereof; or, of precious or semiprecious stones, pearls, or imitations thereof, or cameos, coral, or amber, including artificial, synthetic, or reconstructed pearls, rubies, or other precious stones, strung or set.

The court did not, in that case, hold that proof might not be offered in any case to prove the common or commercial meaning of the term jewelry. The rule had been well established that common meaning might be shown in any case, as an advisory aid and guide to the court. *Robertson* v. *Salomon,* 130 U. S. 415. Proof of commercial designation other than the common meaning of a word is always admissible. But the effect of the holding in the American Bead Co. case, supra, was to establish a common meaning for the term "jewelry," which would prevail, in the absence of a sufficient showing to the contrary. That the court might take judicial notice of the common meaning of such terms is supported by ample authority. *Marvel* v. *Merritt,* 116 U. S. 12; *Sonn* v. *Magone,* 159 U. S. 421; *Tiffany* v. *United States,* 131 Fed. 398.

Following this decision, this court uniformly held until the enactment of the Tariff Act of 1922, that imported merchandise, in the absence of proof of commercial designation to the contrary, could not be classified as jewelry which was not composed of the precious

metals or imitations thereof, precious or semiprecious stones, pearls or imitations thereof, cameos, coral or amber, including artificial, synthetic, or reconstructed pearls, rubies, or other precious stones, cut or set. *United States* v. *Mandel Bros.*, 10 Ct. Cust. Appls. 44.

The underlying reason for all such decisions as the Mandel case last cited, was, that to constitute jewelry, the materials used must be of a certain, specific kind.

The Tariff Act of 1922 became effective September 22, 1922. The Congress saw fit to change the language of the jewelry paragraph. House bill No. 7456, as it passed the House, repeated in paragraph 1428 thereof the language of paragraph 356 of the act of October 3, 1913, as regards jewelry. The Senate Committee on Finance, however, amended the bill and inserted the language: *"finished or unfinished, of whatever material composed."* As so amended this paragraph became a part of the Tariff Act of 1922.

This deliberate act of the Congress must be given effect, if possible. Such is and has been the constant purpose of the courts.

The only reasonable construction to be given to this change of language is that urged by counsel for the Government, namely, that Congress meant to meet and obviate the construction held by this court in the American Bead Co., and Mandel cases, supra. Of such holdings Congress is presumed to have had full knowledge. *Stein, Hirsch & Co.* v. *United States*, 6 Ct. Cust. Appls. 154 (157); *Perry, Ryer & Co.* v. *United States*, idem, 201 (203).

But, irrespective of the congressional purpose, the language used is: "of whatever material composed." This is tantamount to a statement that if the article in question is such that it would be known as jewelry if it were not for the material of which it is composed, then the matter of the material is unimportant, and the article is properly classified as jewelry.

It does not follow that every article of personal adornment, such as a ribbon or a feather ornament, becomes jewelry. The article must be such as is commonly or commercially known as jewelry. This is a matter to be decided in accordance with the facts in each particular case.

This leads to a consideration of the claims of the parties in the suit at bar. The collector classified the various articles as jewelry. That classification must stand unless it has been successfully attacked by something contained in the stipulation. The matter of material having been eliminated, nothing remains except a showing that the articles of import are necklaces with clasps, pendants with holes, and various brooches in the form of flowers. It is claimed by the importers' counsel that these necklaces must be classified as beads, strung, under paragraph 1403. This court has held that bead necklaces might be classified as jewelry: *United States* v. *Woolworth*,

10 Ct. Cust. Appls. 194; *American Bead Co.* v. *United States,* 7 Ct. Cust. Appls. 18 (27); *Kraemer* v. *United States,* 5 Ct. Cust. Appls. 470.   There is nothing in the nature of brooches or·pendants, per se, that militates against their classification as jewelry.

It follows there is nothing in the law or in the record to impeach the classification of the collector.   The judgment·of the,court below is reversed. as to protests 972394, 968908, 968916, 968920, 968917, 968922, 969406, 968919, 968921, and that part of the judgment upon protest 968918 which deals with ivory pendants with holes.   The judgment of the court below upon protest 972395, and that part of the judgment upon protest 968918 which deals with bone bead necklaces is affirmed.

*Modified.*

#### DISSENTING OPINION BY BARBER; JUDGE

I concur in the judgment of the majority so far as it relates to the bone bead necklaces covered by protests 972395 and 968918.

I also agree that the collector's classification must stand, unless successfully attacked by something contained in the stipulation.

I think the facts stated in the stipulation that the component materials are of bone or ivory, establish that the merchandise is not commonly known as jewelry.   It is not claimed to be commercially so known.

As I understand the majority opinion, it rests upon the assumption that the insertion of the term, "finished or unfinished, of whatever material composed," in paragraph 1428 of the act of 1922, which was not in the jewelry paragraph, 356, of the act of 1913, demands that the merchandise here be classified as jewelry, in order to give effect to the new language of the statute.

From this view I dissent.   I assume, without discussion, that the word "jewelry" in the common· understanding, means an article that is ornamental, the primary and dominant use of which is for personal adornment.   *United States* v. *European Watch Co.,* 11 Ct. Cust. Appls. 363, and cases cited.

If, therefore, the interpretation adopted in the opinion of the majority in this case be sound, it follows that every article, the primary and dominant use of which is for personal adornment, is jewelry.   Upon this theory there is no escape from the conclusion that any article made of lead, iron, glass, paste, wood, leather, gelatin, celluloid, fur, hair, feathers, seeds, grass, natural or artificial flowers, as well as circlets of ribbon, velvet, or other fabric worn by women upon the head or around the neck, if worn for personal adornment only, must now be classified as jewelry in the common understanding.

It seems to me that such a result is so inconsistent and absurd that it should not be imputed to the legislative body and that had Congress so intended, it would have clearly so indicated.

It is common knowledge that caprice, whim, or fashion dictates the use, for personal adornment, of a great variety of articles composed of a very wide range of materials. Such use is very often transitory. From this it follows, under the views of the majority, that the common meaning of the word "jewelry" for classification purposes, will be as unstable as the caprice, whim, or fashion that dictates its use.

If Congress had intended that all articles used chiefly for personal adornment, "of whatever material composed," should be deemed to be jewelry, it were easy for it to have said so and thereby avoided all questions of ambiguity.

The rule that effect must be given, if possible, to all the language of the statute, is satisfied in this case by applying the term "of whatever material composed" to unfinished jewelry. In addition, we know that unnecessary language is often employed out of a superabundance of caution, resulting in tautology. Such is the case here, if the majority view be sound, because, grammatically, the quoted term applies to jewelry commercially so known.

In this connection it will be remembered that when a doubt arises as to the interpretation of a statute imposing taxes, the taxpayer has the benefit of such doubt.

It needs not the citation of authority to the proposition that the great fundamental rule in interpreting statutes is to ascertain and, if possible, give effect to the intention of the legislature.

It is my opinion that, when analyzed, the language of the statute itself does not justify the interpretation given thereto. In determining the meaning of additional or amendatory language employed in the reenactment of an existing statute, it is always proper, and some times necessary, to consider what the statute was before the new language was inserted therein.

Under paragraph 356 of the act of 1913 the term "jewelry commonly or commercially so known" meant that any article, regardless of the material of which composed, was dutiable as jewelry if established to be commercially known as such. Hence the phrase "of whatever material composed" added nothing to the force of the expression "jewelry commercially so known;" that is, it was not an amendment to or change of the law then in force. The word "finished" added nothing to the meaning of paragraph 356, because, in the absence of that word, a thing, to be commonly known as jewelry, must of necessity have been finished. Hence the term "jewelry commonly or commercially so known," in paragraph 356, covered all finished jewelry, of whatever material composed, because what was not commonly known as jewelry, if jewelry, would, undoubtedly, be commercially so known.

There was no provision in the act of 1913 for unfinished jewelry. *Mamluck & Co.* v. *United States*, 6 Ct. Cust. Appls. 556.

From the foregoing I conclude that the obvious and real intent of Congress, in using the new language, was to amend the earlier statute by providing that unfinished jewelry, of whatever material composed, should be classified thereunder. In other words, that the actual amendment made was the provision for unfinished jewelry, of whatever material composed. In this connection it was quite natural for the sake of euphony and to balance the word "unfinished" to use the superfluous word "finished."

The only foundation, therefore, as I see it, upon which the interpretation given by the court to the term "of whatever material composed" can rest is the punctuation inserted in connection with the new language employed.

It is unnecessary to discuss that subject in view of the well-settled rule that punctuation must yield to the obvious intent of the legislative body.

As I understand the main opinion, it holds that the classification of the merchandise as jewelry, implies that the collector found the same to be jewelry commonly so known, and that such classification immediately raises a presumption of correctness that it is commonly so known, which requires evidence to refute it, in the absence of which such classification must be upheld by the court.

I find myself unable to agree with that conclusion or to attach to the collector's action such presumption of correctness. The term, "jewelry commonly so known" means, as I view it, jewelry as that word is commonly understood. That the court has final and ultimate power and that it is its duty to determine such meaning, as matter of law, I have no doubt. *Sonn* v. *Magone*, 159 U. S. 417.

Of course, the collector may give his opinion as to this, as well as any other question of law, but when his action in that respect is challenged and comes before us for review, there is no presumption that he has correctly construed the statute. For the court to hold otherwise is to abdicate its authority and avoid performing its duty.

To use some extreme illustrations which, however, test the principle, could it be held, if the collector classified an ordinary hat, dress, coat, shawl, a pair of shoes or gloves, as jewelry, that there was any presumption arising from such act that any such article was jewelry?

It is said in the main opinion, in substance, that it does not follow that every article of personal adornment, such as a ribbon or a feather ornament, becomes jewelry. But it is easy to suppose that a case may come here in which either of these articles, concededly worn for personal adornment, had been assessed as jewelry. Would the court say, no proof being offered in the case, that they were such? Or, to go a step further, but still keep within the principle, if a small

piece of fur worn around the neck, a necklace of natural flowers, a bracelet of ·grass fastened with a wooden button,· a daisy chain worn by a school girl returning from Canada, all concededly used and worn only as articles of personal adornment, were classified as jewelry, would the court uphold that classification, there being no other evidence in the case whatever?

I would affirm the judgment below:

SMITH, Judge, concurs in the dissenting opinion: