UNITED STATES v. HEINRICH HERRMANN & WEISS (No. 4372)[1]

---

[1] C. A. D. 213.

United States Court of Customs and Patent Appeals, June 29, 1942

*Paul P. Rao*, Assistant Attorney General (*John J. McDermott*, special attorney, of counsel), for the United States.

*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for appellee.

[Oral argument April 7, 1942, by Mr. Rao and Mr. John D. Rode]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division.

Certain pigskin cuff links, imported into the United States at the port of New York and claimed by the importer, appellee, to be dutiable under paragraph 1531 of the Tariff Act of 1930, as manufactures of leather not specially provided for, at 35 per centum *ad valorem*, were classified by the Collector of Customs as "Jewelry, commonly or commercially so known, finished or unfinished * * * of whatever material composed * * *," and assessed with duty at rates totalling 110 per centum *ad valorem* under paragraph 1527 (a) (2) of the said tariff act. After trial the court found for appellee and judgment issued accordingly.

The paragraphs in question read as follows:

PAR. 1527. (a) Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof):

(1) Composed wholly or in chief value of gold or platinum, or of which the metal part is wholly or in chief value of gold or platinum, 80 per centum ad valorem;

(2) all other, of whatever material composed, valued above 20 cents per dozen pieces, 1 cent each, and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem: *Provided,* That none of the foregoing shall be subject to a less amount of duty than would be payable if the article were not dutiable under this paragraph.

(b) Rope, curb, cable, and fancy patterns of chain not exceeding one-half inch in diameter, width, or thickness, valued above 30 cents per yard, of gold or platinum, 80 per centum ad valorem; of any other metal, whether or not plated with gold or platinum, 6 cents per foot, and in addition thereto three-fifths of 1 cent per yard for each 1 cent the value exceeds 30 cents per yard, and 50 per centum ad valorem.

(c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished:

(1) Composed wholly or in chief value of gold or platinum, or of which the metal part is wholly or in chief value of gold or platinum, 80 per centum ad valorem;

(2) composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), or (if not composed in chief value of metal and if not dutiable under clause (1) of this subparagraph) set with and in chief value of precious or semiprecious stones, pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls, 1 cent each and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem.

(d) Stampings, galleries, mesh, and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any of the foregoing articles in this paragraph, if of gold or platinum, 75 per centum ad valorem; if of other metal or metals, plated or unplated, 80 per centum ad valorem.

Par. 1531. Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, not jewelry, wholly or in chief value of leather or parchment, and manufactures of leather, rawhide, or parchment, or of which leather, rawhide, or parchment is the component material of chief value, not specially provided for, 35 per centum ad valorem; any of the foregoing permanently fitted and furnished with traveling, bottle, drinking, dining or luncheon, sewing, manicure, or similar sets, 50 per centum ad valorem.

The articles involved are ordinary link cuff buttons made of tan color pigskin leather. The button portions are joined by a short link of the same kind of leather. They are not decorated or embellished in any manner.

On the trial below, counsel for appellee introduced Exhibit 1 as representative of the involved importation, described in the preceding paragraph.

Two witnesses were called by appellees, Robert Herrmann, president of appellee, and Samuel Bamberger, who had been in the jewelry business for 30 years. At the time he testified the latter witness was connected with a pearl importing company which also dealt in novelty jewelry. Formerly he had been with a different firm engaged in the importation of precious stones and semiprecious stones and also in the making up of novelty jewelry.

The witness Herrmann testified that the business of the appellee company was manufacturing and importing leather goods and novelties and that it did not deal in jewelry. He stated that he had been dealing in merchandise similar to Exhibit 1 for 3 or 4 years and had sold it at wholesale throughout the United States to department

stores, in the leather goods, trunk, luggage and novelties departments. He further testified that his company did not sell this kind of goods to jewelry stores. In his opinion the involved cuff links were not articles of adornment but were articles of practical use, although he thought a cuff link made of gold, silver, or metal would be an article of jewelry if it were an article of adornment.

The witness Bamberger testified that in the jewelry trade the common and commercial meaning of the term "jewelry" is the same and was applied to articles for adornment of the person. This witness, although he had sold everything in the jewelry line for 30 years, including cuff links made of precious and other metals, stated that cuff links so sold were not jewelry.

Two witnesses testified for the Government. One was an Examiner of Merchandise at the Port of New York, of long experience, assigned to advisorily make return for customs purposes on imitation jewelry and silver. The advisory return on the involved merchandise was made under his supervision and he stated the said merchandise to be identical in all material respects to that involved in the case of *David P. Barry Corporation* v. *United States*, 901256-G, the record in which was received and made part of the record herein. The judgment of the Customs Court in that case was not appealed, and the Abstract decision 40738 therein appears in 2 Cust. Ct. 593.

It appears in the present case that the examiner had visited jewelry stores and had seen men's jewelry on display such as rings, chains, tie clasps, collar holders, and cuff links. The witness did not state he had ever seen leather cuff links so displayed. When asked to describe the manner in which he had seen articles like Exhibit 1 used, he stated "Used as cuff links for primarily decorative, and, incidentally, utilitarian purposes." On cross-examination the witness admitted that if cuff links could not be seen when in use they are not essentially for ornamentation.

The other Government witness was connected with a company in New York engaged in the business of importing silver articles including jewelry for men, which were sold at retail establishments in that city. Among other silver articles his company imported and sold silver cuff links for men. While he admitted he did no buying or selling for his company, he testified that "We consider them as jewelry, and they are displayed with women's jewelry at the same counter."

The incorporated record in the *Barry* case *supra* consists of the testimony of a single witness and a single exhibit of the imported merchandise. According to the abstract decision in that case the involved merchandise was invoiced as "Plaited Leather Cuff Links" and was classified under paragraph 1527 (a) and (c) of the Tariff Act of 1930 and claimed dutiable as in the instant case. The court in the

*Barry* case *supra* held that on the record and in view of the case of *United States* v. *Doragon,* 13 Ct. Cust. Appls. 182, T. D. 41051, and the case of *United States* v. *Cohn,* 19 C. C. P. A. (Customs) 137, T. D. 45259, that the merchandise was properly dutiable under paragraph 1527 (a).

Exhibit 1 in the *Barry* case *supra* is a card upon which are fastened six different cuff links, one of which is identical in shape with and seemingly made of the same material, as the merchandise involved here. The other five links while made principally of leather, show the button portions to be of various colors, and the surfaces thereof are apparently finished with a kind of enamel. Some have horses' heads embossed thereon, others have bright-colored stripes crossing the colored button portions which are of various shapes. Those later links differ clearly in appearance and construction from the merchandise of the instant case. They are attractive in appearance whereas the goods here involved possess no eye appeal whatsoever.

The witness in that case, who was an officer of the importer, which was engaged in the business of buying and selling jewelry for men, testified that he sold at wholesale the involved merchandise to department stores where it was sold in the jewelry and luggage departments of New York City, the Middle West, and in the South. In answer to a question as to where the goods were displayed he stated "In a small way you will find a pair here and there in the jewelry department, but they are largely handled and given conspicuous spots in what is known as the luggage department. That is a department intended for small articles exclusively of leather." The witness further testified that he had not sold articles like Exhibit 1 to jewelers dealing only in jewelry. The witness also said that, as sold, the involved merchandise as a general rule was contained in jewelry cases. The witness stated that based upon his experience he recognized no difference between the expressions "commonly known as jewelry" and "commercially known as jewelry."

The trial court, on the record made in the instant case, not taking into consideration the incorporated record, stated:

On the weight of the foregoing testimony we should unhesitatingly decide that the involved leather cuff links were not jewelry as the term is used commercially or commonly.

The trial court then carefully considered the *Barry* case *supra* and distinguished the facts in that case from those in this case. The court noted that the importer there was a jewelry house for men handling jewelry only, with the exception of notions, among which were classed the there involved merchandise. The court pointed out that the business in said *Barry* case, in leather cuff links, was done principally with the luggage departments of department stores and

stressed the difference between the hereinbefore mentioned five cuff links and the cuff links here involved. With respect to that difference the trial court stated as follows:

\* \* \* This shows five of the samples are of different colors with various designs and somewhat glazed so as to conceal the fact that they were leather and to simulate enamel or, perhaps, some semiprecious stones. At any rate, five of the samples were more decorative and adaptive for adornment as imitation jewelry than the plain, almost unrelieved, palpably leather cuff links now before us. In fact five of the samples in the *Barry* case are in no way comparable to the plain leather links now before us. It seems reasonable that a line of links as shown by the Barry samples might be handled by jewelry stores and departments as imitation jewelry capable of being worn for adornment, whereas it is hard to believe that the plain leather cuff links here involved would be bought or sold for anything other than the wholly utilitarian purpose of holding the two ends of the cuffs together. They might, if exposed to view, attract attention as a novelty but hardly as an adornment. They certainly do not conform to any definition of "jewelry" that we have seen. Webster's International Dictionary, edition of 1916, and Funk and Wagnalls International Dictionary, 1939 edition, give the following definition of "jewelry":

jewelry, taken collectively; Precious stones in mountings; Gems or ornaments prepared or sold by jewelers; Jewelers' work.

The 1939 edition of Webster's International Dictionary gives the following definition:

jewels, taken collectively; Personal ornaments, as badges, bracelets, brooches, pendants set or studded with jewels.

The plain pigskin cuff links here involved conform to none of the above definitions, on which we must rely, as the testimony in the record as to both the common and commercial meanings is so contradictory as to be worthless, except that it was generally testified to that adornment must be one of the characteristics of jewelry.

The Government moved for a rehearing in the instant case, relying principally on the *Doragon* case *supra*, from which it quoted extensively. The motion was denied.

The question to be decided here is whether or not the involved merchandise is jewelry, as classified by the collector.

Appellant's contention is that all cuff links, regardless of what material made, are jewelry. We cannot agree with such contention. In our opinion, whether or not such articles are either commonly or commercially known as jewelry depends largely upon the articles themselves and the use to which they are put. For instance, a cuff might be held together with a cuff link so ornamental as to be commonly or commercially known as jewelry. In such a circumstance, it would be held that the cuff link is jewelry. On the other hand the link might comprise two ordinary and unornamental buttons connected by thread and used for the same purpose. According to the Government's contention such a link, if imported, would, in a tariff sense, be properly classified as jewelry. Such an anomaly requires no discussion.

It seems to us that before articles claimed to be jewelry, no matter of what materials they may be constructed, should be classified as was the involved merchandise, they must be so ornamental as to be commonly or commercially known as jewelry.

We are of opinion that the presumption of correctness attaching to the classification of the goods herein was overcome by appellee and the case for the Government does not sustain its contention. Therefore we must conclude that link cuff buttons, such as those involved herein, are not properly dutiable as classified by the collector.

None of the cases relied upon by the Government hold that any articles such as those herein involved would not have to be first known as jewelry by reason of ornamental character before they would be subject to duty as assessed here by the collector. The *Doragon* case *supra* upon which appellant basically relies stated as follows:

It does not follow that every article of personal adornment, such as a ribbon or a feather ornament, becomes jewelry. The article must be such as is commonly or commercially known as jewelry. This is a matter to be decided in accordance with the facts in each particular case.

It is not contended that if the goods herein are not properly classifiable under paragraph 1527 they are not to be held dutiable as manufactures of leather under paragraph 1531 as claimed.

For the reasons set out herein the judgment of the United States Customs Court is *affirmed*.

### DISSENTING OPINION

Bland, Judge: I regret my inability to agree with my associates that the imported merchandise involved here is not jewelry.

As I understand the opinion of the majority, it is to the effect that the articles—leather cuff links—do not fall within the term "Jewelry, commonly or commercially so known, * * * of whatever material composed," for the sole reason that they are not sufficiently ornamental to be regarded as jewelry.

According to *American Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18, T. D. 36259, a thing, to be jewelry under tariff acts enacted prior to 1922, had to be composed of certain metals or stones or imitations of the same. Under the wording of the tariff acts prior to the act of 1922 an enormous amount of cheap jewelry came into this country, made of such materials as bone, wood, lignite, and amber. In order to make this kind of article bear a rate of duty which Congress thought proper, it, in the 1922 act, added the words "of whatever material composed."

By a dividied court we held, in *United States* v. *Doragon Co. et al.*, 13 Ct. Cust. Appls. 182, T. D. 41051, and *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 190, T. D. 41052, that we could

give no meaning to the language other than to say that if the article was jewelry if composed of any kind of material, the fact that it was of wood or any other material would not prevent its being held to be jewelry. As a result, in those cases and other cases decided subsequently, we held articles made of bone, jet, and other materials not formerly recognized as jewelry material, to be jewelry. Therefore, in the instant case the fact that the articles are made of leather is immaterial.

To be "jewelry, commonly or commercially so known," the rule is laid down that the article must be worn at least in part for the purpose of adornment. Therefore, it must have some ornamental character. The fact that it is utilitarian makes no difference. *United States* v. *American Express Co.*, 6 Ct. Cust. Appls. 97, T. D. 35341; *United States* v. *International Forwarding Co.*, 6 Ct. Cust. Appls. 25, T. D. 35272; *American Bead Co.* v. *United States, supra.*

Cuff links are jewelry. *Wagner* v. *Congress Square Hotel Co.*, 98 A. 660.

The issue in the case at bar is whether or not the instant leather cuff links are sufficiently ornamental to be regarded as jewelry. I think they are. The leather is polished, and the tops or faces of the buttons of the links are stitched with white thread, probably silk, against the polished leather background. The polished leather color adorns a shirt of a different color, and it is obvious that it is designed to be worn for that purpose as well as for the utilitarian purpose of holding the cuffs together.

This court has held a number of times, with respect to musical instruments and objects of art, that what is music or art to one may not be music or art to another. *United States* v. *Bernard, Judae & Co. et al.*, 13 Ct. Cust. Appls. 306, T. D. 41230. The same may be said of adornment. What one person regards as adornment might be wholly different from that which the taste of another would require.

The articles at bar are worn as jewelry. They have all the characteristics of what is commonly understood to be jewelry except that they are of leather, and Congress tried to see to it that this fact made no difference.

Let us suppose that a dash of red enamel were placed upon the buttons. Would that make them sufficiently ornamental? Plain gold cuff links without any embellishment whatever admittedly are jewelry.

Upon the authority of the majority opinion, are we to look at every variety of imported jewelry to see whether it has sufficient ornamental appeal to the eye to meet the requirements of the test laid down by the majority? Few men would agree on this question, and it is not sufficient simply to say that these cuff links are too

plain and not suffiicently ornamental to be regarded as jewelry. Is the view of individual judges to overcome the presumption that flows from the collector's action?

I call attention to the leather paragraph (paragraph 1531 of the 1930 act) quoted in the majority opinion, which reads in part:

PAR. 1531. Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, *not jewelry*, wholly or in chief value of leather or parchment, and manufactures of leather, rawhide, or parchment, or of which leather, rawhide, or parchment is the component material of chief value, not specially provided for, 35 per centum ad valorem; * * * [italics mine.]

If I interpret this paragraph properly, Congress contemplated that leather watch chains, leather cuff links, and other jewelry articles of leather would be excluded from this paragraph. What jewelry articles made of leather would the majority exclude from the paragraph? And when excluded, where would they be held to be dutiable? The fact that they are cheap makes no difference. The duty provision including the ad valorem rate takes care of that situation.

I think the judgment of the trial court should be reversed.