Before the First Division, October 8, 1963

No. 68017.—Brier Manufacturing Company *v.* United States, protests 59/27159, etc. (Providence).

Oliver, Chief Judge: Plaintiff, a manufacturer and an importer of jewelry and hair accessories, imported certain hair ornaments, which were assessed with duty at the rate of 55 per centum ad valorem under the provision in paragraph 1527(a) (1) and (2) of the Tariff Act of 1930, as modified by T.D. 51802, for "Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof) : * * * of whatever material composed, valued above 20 cents per dozen pieces."

Although each of the consolidated protests enumerated in schedule "A," hereto attached and made a part hereof, makes the claim for classification of the present merchandise, by similitude to the cellulose articles provided for in paragraph 31(a) (1) and (2), as amended by T.D. 54108, plaintiff's evidence can be applied only toward establishing direct classification of these hair ornaments under said amended paragraph at a dutiable rate of 17 per centum ad valorem. That the protests, as drawn, are sufficient for such direct classification, is supported by ample authority. *Rice & Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 165, T.D. 38403; *United States* v. *Malone*, 12 Ct. Cust. Appls. 178, T.D. 40167.

Paragraph 31(a) (1) and (2), as amended by T.D. 54108, reads as follows:

| 31(a) | Cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate: |
|---|---|
| (1) | In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, whether or not colloided, and waste wholly or in chief value of cellulose acetate, all the foregoing not made into finished or partly finished articles: |
| | Wholly or in chief value of acrylic resins___ * * * 21¢ per lb. |
| | Other_____ * * * 10.5¢ per lb. |
| (2) | Made into finished or partly finished_____ * * * 17% ad val. articles of which any of the foregoing is the component material of chief value, and not specially provided for. |

Defendant, in its brief, argues, as one reason why the protests should be overruled, "There has been a complete failure of proof under plaintiff's claim by similitude within the statutory provisions of Paragraphs 1559(a)/31(a)(2), *supra*." In making such contention, Government counsel overlooks the terms of a stipulation, entered into, between the parties, at the hearing of the case at Providence, R.I., where the merchandise was entered. The stipulation appears in the record as follows (R. 2–3) :

Mr. Paisner: * * * I offer to stipulate that the merchandise involved in the case at bar is not made of metal; it is not in chief value of metal and it is not in chief value of amber, cameos, coral, imitation pearl, imitation precious or semi-precious stones, pearls or precious or semi-precious stones. It is further included in the stipulation that the plastic base, the portion of the ornaments in question exclusive of the ornamentation, is made of acrylic type synthetic resin, not containing filler material, which is of greater value than the decorations of

imitation pearls or stones, or other ornamentation; that is to say, that the plastic base which is of greater value.

MISS STRUM: I have consulted with the customs officials at the port of Providence, Rhode Island, Appraiser Regan, Liquidator Thomas Connolly, and Examiner Irving Murphy, who are in the courtroom today, and they are familiar with the merchandise and advise me that Mr. Paisner's statement is correct. The government therefore so stipulates.

The provision for commodities, "Wholly or in chief value of acrylic resins," as it appears in paragraph 31(a) (1) and (2), as amended, *supra*, carries the conclusion that merchandise composed of an acrylic resin is, in fact, a compound, combination, or mixture containing cellulose acetate. In the light of such special consideration of merchandise made of acrylic resin, the effect of the foregoing agreement between the parties herein is to establish, *so far as the components are concerned*, that the articles in question are within the provisions of said amended paragraph, thereby eliminating the requirement of proof on the matter of similitude. Thus, the issue herein is confined to the question of whether or not the items in question are jewelry. Plaintiff's brief states the limited issue before us as follows:

Plaintiff contends that the imported items are hair ornaments and are not commonly or commercially known as jewelry. Hair ornaments are specifically provided for in paragraph 1527(c) when they are in chief value of (1) metal or (2) stones or pearls or imitations thereof (paragraph 1527(c) (1) and (2)). The hair ornaments here involved do not come within either of these material descriptions. It is the importer's contention that the merchandise is, therefore, not specially provided for in the Act and should have been assessed under paragraph 31(a) (2), as modified, as finished articles of which acrylic resin is the component material of chief value.

Two witnesses testified on behalf of plaintiff. The first was its executive vice president and the second was a buyer of notions for a department store. Both witnesses showed considerable experience with the trade, particularly chain variety stores and department stores, which are the largest dealers and handle the greatest volume throughout the United States, of hair ornaments, like those in controversy.

The different items in dispute were identified by the executive vice president of the plaintiff corporation. They consist of hair ornaments of various sizes and shapes that are embellished with different kinds of decorations. All of them serve the utilitarian purpose of keeping the hair in place to conform with various styles of hairdos. In addition, their ornamentation imparts a decorative effect. The "hair bandeaux" (plaintiff's collective exhibit 1) are headbands, decorated on top with small clusters of tiny plastic spheres, coated with imitation pearl or gold coloring. In use, hair bandeaux are "placed over the top of the head to keep the hair in place and also for decoration." (R. 11.) So-called "chop sticks," "hair sticks," or "chignon sticks" (plaintiff's collective exhibit 1–A), are adapted to be placed, usually in the back of the hair. Their overall length is approximately 4 inches, with the head of the "stick" twisted into a fancy design and decorated with plastic clusters, similar to those appearing on the bandeaux (collective exhibit 1). The "coiffeur buckles" (plaintiff's collective exhibit 1–B) range in dimensions from 3 inches to 4 inches long and ½ inch to 1½ inches in width, decorated with ornamentation, substantially the same as that appearing on the other two collections of items. The "coiffeur buckles" are used to hold the hair for a particular type of hairdo, called "a pony tail," in which all the hair is drawn to the back of the head. To permit such usage, a plastic pin (plaintiff's exhibit 2) may be employed to "slide through the back of the buckle." (R. 14.)

The combined testimony of both of plaintiff's witnesses is to the effect that there is a definite line of demarcation in the trade between jewelry and hair ornaments. Articles of jewelry, such as rings, chains, pins, necklaces, brooches, bracelets, and earrings, are always displayed and sold in the jewelry department of chain variety stores and department stores. On the other hand, hair ornaments are displayed and sold only in the notions department of such stores. Whether or not hair ornaments are decorated like the items under consideration (collective exhibits 1, 1–A, and 1–B) or are plain, without any decoration, like the bandeaux, sticks, and buckles shown in plaintiff's illustrative exhibits 3 and 4, they are always handled in the notions department, and never in the jewelry department. Buyers for chain variety stores and department stores recognize the same distinction between the two classes of merchandise. Jewelry buyers limit themselves to merchandise sold in the jewelry department, which excludes hair ornaments; buyers of notions adhere strictly to items handled in their department, which includes hair ornaments. Trade journals (plaintiff's exhibits 5 and 6) are corroborative of the witnesses' testimony to the effect that hair ornaments, whether plain or ornamented, are exclusively associated with, or carried in, the notions department of chain variety stores and department stores.

Defendant's only witness was the United States customs examiner at Providence, R.I., who officially examined the present merchandise. His testimony offers no contradiction of that adduced by plaintiff's witnesses. He agreed with plaintiff's witnesses, in stating that the hair ornaments under consideration "are worn in the hair for utilitarian and ornamental purposes." (R. 156.) He identified certain hair ornaments (defendant's illustrative exhibits A, B, C, D, E, F, and G) that he purchased at either a department store or a variety store in Providence. In connection therewith, his testimony is to the effect that his purchases in each store were made either at the notions counter or from a rack, exclusively holding hair accessories, and that, in both places, all hair ornaments, whether plain or decorated, were displayed on the same counter or rack.

Testimony relating to the applicability of a Federal excise tax has no bearing on the outcome of the present issue. The tariff classification of the present merchandise is not to be influenced through a standard established by a Government agency for some other purpose. *Mercantil Distribuidora, S.A., et al.* v. *United States,* 33 Cust. Ct. 158, C.D. 1648.

Whether or not an article is commonly or commercially known as jewelry, "is a matter to be decided in accordance with the facts in each particular case," *United States* v. *Doragon,* 13 Ct. Cust. Appls. 182, T.D. 41051. Much of the testimony herein is directed toward showing that the hair ornaments in question are items of hair accessories which are sold in the notions department that is separate and distinct from the jewelry department of variety chainstores and department stores. Samples of the present merchandise (collective exhibits 1, 1–A, and 1–B) support the oral testimony to the effect that these hair ornaments are articles of utility, to hold the hair in place, and having a decorative effect, to make them attractive for women's wear.

While the merchandising medium through which articles are sold may not be controlling of the tariff classification of merchandise, the importance thereof has been recognized by the courts. In *United States* v. *Ignaz Strauss & Co., Inc.,* 37 CCPA 48, C.A.D. 418, referred to in the briefs of both counsel, the merchandise consisted of certain plastic combs with silver trimming that were worn "in the back of a woman's hair, to decorate the back part of her head," and never used to comb the hair. The importer's uncontradicted testimony established that the

combs were exclusively displayed and sold in jewelry stores and the jewelry departments of department stores, and that the only type of trade that bought such combs was the jewelry trade. In sustaining a claim for classification of the merchandise as jewelry, the appellate court stated as follows:

We are convinced after a careful consideration of the testimony hereinbefore set forth that the only reasonable inference to be drawn from such testimony and an inspection of the sample in evidence is that such combs were so ornamental as to be commonly and commercially known as jewelry; * * *.

In *Baar & Beards, Inc., et al.* v. *United States*, 37 Cust. Ct. 308, Abstract 60159, we had before us certain so-called "pearl ladders," that consisted of "a ladder-like arrangement of imitation pearl beads, approximately 10 inches in length." From the record therein, we found that the "pearl ladders" were "chiefly used in conjunction with articles of ladies' decorative neckwear; that their predominant use is with scarves in the creation of pearl-trimmed scarves and pearl-ladder scarves; that such scarves are sold to the neckwear departments of department stores and to specialty shops; that the imported 'pearl ladders' are never sold to the jewelry trade; and that they are never used alone," and concluded therefrom that the evidence was sufficient to establish that the "pearl ladders" involved therein were not jewelry, as classified by the collector. The cited cases supply authority for a view of the evidence herein—oral testimony coupled with the samples (collective exhibits 1, 1–A, and 1–B, *supra*)—favorable to plaintiff's contention. Accordingly, we find that the preponderance in weight of the evidence, as heretofore discussed, is sufficient to establish that the hair ornaments in question are not "Jewelry, commonly or commercially so known," under paragraph 1527(a)(2), as modified, *supra*, invoked herein by the collector.

The conclusion is supported under the statutory provision that includes hair ornaments. In paragraph 1527(c)(2) of the Tariff Act of 1930, as originally enacted and as modified, Congress has provided for a wide variety of articles under the general provision for articles, composed of metal or set with and in chief value of precious or semiprecious stones, pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls, "designed to be worn on apparel or carried on or about or attached to the person." In judicial interpretation thereof, it has been held that the said provision covers all articles, made of the specified materials, which, in their customary use, are carried on or about or attached to the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment, and that they may be articles of utility or of adornment, or they may possess both qualities. *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T.D. 35343; *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T.D. 42079; and *United States* v. *Astra Trading Corp.*, 44 CCPA 8, C.A.D. 627. Hair ornaments are specifically designated in said paragraph 1527 (c)(2) as one of the exemplars—there are 23 enumerated—indicative of the kinds or types of articles contemplated by the general, basic, provision of the paragraph.

The testimony adduced herein concerning the use of the present merchandise, in conjunction with the samples thereof, clearly associates these hair ornaments within a class of articles provided for in paragraph 1527(c)(2), but they are excluded from classification thereunder by reason of the material of which they are composed. Being concededly items that are "made of acrylic type synthetic resin, not containing filler material" (R. 3), the merchandise under consideration is properly classifiable under the provision in paragraph 31(a)(2), as modified, *supra*, for articles made "Wholly or in chief value of acrylic resins," and not specially provided for, as claimed by plaintiff.

Consideration has been given to all of the authoritative references and cases cited in the briefs filed by counsel for the respective parties. We have referred herein only to those cases which support the reasoning followed and the conclusion reached.

On the basis of the present record and for all of the reasons hereinabove set forth, we hold the hair ornaments in question, represented by the samples in evidence (plaintiff's collective exhibits 1, 1–A, and 1–B) and identified by invoice items 50449, 50450, 50451 (collective exhibit 1), 50471, 50472, 50473, 50537, 50538, 50539 (collective exhibit 1–A), 50437, 50438, 50439, 87900, 87902, 87903, and 88233 (collective exhibit 1–B), to be dutiable at the rate of 17 per centum ad valorem under paragraph 31(a)(2), as amended by T.D. 54108, as articles made wholly or in chief value of acrylic resin, not specially provided for, as claimed by plaintiff.

To the extent indicated, the protests are sustained and judgment will be rendered accordingly.