UNITED STATES v. BRIER MANUFACTURING COMPANY (No. 5165)*

United States Court of Customs and Patent Appeals, April 8, 1965

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Mollie Strum* for the United States.
*Isadore Paisner* for appellee.

[Oral argument February 1, 1965, by Miss Strum and Mr. Paisner]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Associate Judges

WORLEY, Chief Judge, delivered the opinion of the court:

 The involved importations in this appeal by the Government are certain hair ornaments, assessed at 55 per centum ad valorem under paragraph 1527(a)(2) of the Tariff Act of 1930, as modified by T.D. 51802, for "Jewelry, commonly or commercially so known, * * * of whatever material composed." The importer's protest was sustained by the Customs Court which held the merchandise classifiable under paragraph 31(a)(2), as amended by T.D. 54108, as articles of which acrylic resin is the component material of chief value.

Paragraph 1527(a)(2) of the Tariff Act of 1930, as modified by T.D. 51802, reads:

> Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof) :
>
> * * * * * * *
>
> All other, of whatever material composed, valued above 20 cents per dozen pieces_____ 55% ad val.

---

*C.A.D. 854.

Paragraph 31(a)(1) and (2) of the Tariff Act of 1930, as modified by T.D. 54108, is as follows:

> Cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate:
>
> (1) In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, whether or not colloided, and waste wholly or in chief value of cellulose acetate, all the foregoing not made into finished or partly finished articles:
>
> Wholly or in chief value of acrylic resins_____ 21¢ per lb.
> Other_____ 10.5¢ per lb.
>
> (2) Made into finished or partly finished articles of which any of the foregoing is the component material of chief value, and not specially provided for_____ 17% ad val.

The evidence includes a stipulation of counsel and the testimony of two witnesses for the importer and one for the Government. Exhibits were introduced by both parties.

The merchandise is described by the Customs Court as follows:

> * * * They consist of hair ornaments of various sizes and shapes that are embellished with different kinds of decorations. All of them serve the utilitarian purpose of keeping the hair in place to conform with various styles of hairdos. In addition, their ornamentation imparts a decorative effect. The "hair bandeaux" * * * are headbands, decorated on top with small clusters of tiny plastic spheres, coated with imitation pearl or gold coloring. In use, hair bandeaux are "placed over the top of the head to keep the hair in place and also for decoration." * * * So-called "chop sticks," "hair sticks," or "chignon sticks" * * * are adapted to be placed, usually in the back of the hair. Their overall length is approximately 4 inches, with the head of the "stick" twisted into a fancy design and decorated with plastic clusters, similar to those appearing on the bandeaux * * *. The "coiffeur buckles" * * * range in dimensions from 3 inches to 4 inches long and ½ inch to 1½ inches in width, decorated with ornamentation, substantially the same as that appearing on the other two collections of items. The "coiffeur buckles" are used to hold the hair for a particular type of hairdo, called "a pony tail," in which all the hair is drawn to the back of the head. To permit such usage, a plastic pin * * * may be employed to "slide through the back of the buckle."

It is stipulated that the merchandise has a plastic base of acrylic type synthetic resin, not containing filler material, the base being of greater value than the decorations.

The Government contends that merchandise made of acrylic resin cannot be classified *directly* under paragraph 31(a), but can only be classified thereunder on proof of *similitude* by virtue of paragraph 1559, Tariff Act of 1930.[1] It notes that the importer's protest claimed the merchandise should be classified by similitude, under paragraph

---

[1] Paragraph 1559 of the Tariff Act of 1930 as amended by the Customs Simplification Act of 1954 (T.D. 53599, 89 Treas. Dec. 242, 244) reads in part:

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned * * *.

1559, to "cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate * * * under paragraph 31(a)(2) of the Tariff Act of 1930, as modified," and argues that the importer neither proved similitude nor attempted to prove that acrylic resin is a compound, combination or mixture containing cellulose acetate. The Government points out that the original provisions of paragraph 31(a) did not mention acrylic resins, and refers to (1) a document said to bear on the intentions of the trade agreement negotiators, and (2) certain publications of the Tariff Commission, as evidence that acrylic resins were included under paragraph 31(a) only on the basis of similitude.

Although the Customs Court did not find that the importer' had proved similitude, it stated:

The provision for commodities, "Wholly or in chief value of acrylic resins," as it appears in paragraph 31(a)(1) and (2), as amended, *supra*, carries the conclusion that merchandise composed of an acrylic resin is, in fact, a compound, combination, or mixture containing cellulose acetate. In the light of such special consideration of merchandise made of acrylic resin, the effect of the foregoing agreement between the parties herein is to establish, *so far as the components are concerned*, that the articles in question are within the provisions of said amended paragraph, thereby eliminating the requirement of proof on the matter of similitude. * * *

We find no error in that conclusion. Paragraph 31(a), as amended, includes acrylic resins specifically, leaving neither a necessity for proving similtude nor reason for examining the history of the negotiations which resulted in the present form of the paragraph.

The Government argues that jewelry can include hair ornaments and that the instant articles, exemplified by collective exhibits in the record, are so highly ornamented that an inspection is convincing that they are jewelry. It also relies on *United States* v. *Ignaz Strauss & Co., Inc.*, 37 CCPA 48, C.A.D. 418, wherein certain plastic combs ornamented with silver trim were held to be jewelry.

As correctly noted by the Customs Court, ▮ whether an article is commonly or commercially known as jewelry "is a matter to be decided in accordance with the facts of each particular case." *United States* v. *Doragon Co. et al.*, 13 Ct. Cust. Appls. 182, T.D. 41051. The facts established in the present case satisfy us that the court did not err in deciding that the present imports are not jewelry in a tariff sense.

The testimony of the importer's witnesses, experienced in the chain, variety, and department store trades, which are said to handle the largest volume of hair ornaments in this country, provides satisfactory evidence that the articles are sold in the notions departments of such stores, which departments are separate and distinct from the jewelry departments. That testimony and the collective exhibits further indicate that the articles have utility, viz, to hold the hair in place, as well

as a decorative effect. The Government's witness testified that the hair ornaments under consideration "are worn in the hair for utilitarian and ornamental purposes." Thus the situation presented by the record differs significantly from that in the *Strauss* decision, where uncontradicted testimony established that the silver-trimmed combs, worn to decorate the back of the head and never used to comb the hair, were exclusively displayed and sold in jewelry stores, the jewelry departments of department stores, and in lingerie shops where they were selling other articles of jewelry, and that the only type of trade that bought such combs was the jewelry trade. Also, the court in *Strauss* found that the articles were so ornamental as to be commonly and commercially known as jewelry. That is not the case with respect to the instant imports.

The Customs Court also pointed out that paragraph 1527 (c) (2) of the Tariff Act of 1930, as originally enacted and as modified, has provision for a variety of enumerated articles, including hair ornaments, "designed to be worn on apparel or carried on or about or attached to the person" where the articles are composed of metal or set with and in chief value of precious or semi-precious stones. It noted that the testimony associates the merchandise at bar with the hair ornaments covered by that paragraph, but it is excluded from classification therein by reason of the material of which it is composed. That seems to us to be a further indication that, on this record, the imports were properly classified on the basis of the material instead of as jewelry.

The judgment is *affirmed*.