UNITED STATES v. INTERNATIONAL FORWARDING CO. (No. 2410)[1]

1. CONSTRUCTION, PARAGRAPH 1428, TARIFF ACT OF 1922—JEWELRY * * * OF WHATEVER MATERIAL COMPOSED.

2. MOTHER-OF-PEARL BEAD NECKLACES.

The Board of United States General Appraisers should have overruled a protest claiming classification of mother-of-pearl bead necklaces as articles of beads under paragraph 1403, Tariff Act of 1922, against the collector's assessment as jewelry under paragraph 1428. *United States* v. *International Forwarding Co.*, 12 Ct. Cust. Appls. 530, T. D. 40733, overruled.

United States Court of Customs Appeals, July 3, 1925

REHEARING of *United States* v. *International Forwarding Co.*, 12 Ct. Cust. Appls. 530, T. D. 40733

[Original opinion overruled.]

BLAND, Judge, delivered the opinion of the court:

This case was decided by this court on the 6th day of March, 1925, and the judgment of the Board of General Appraisers was affirmed. A rehearing has been granted, and the one question involved has been discussed and considered at much greater length. The imported articles in question are finished necklaces made of mother-of-pearl beads strung on substantial double silk cords and fastened with brass clasps.

The beads are graduated in size from about one-eighth of an inch in diameter at the ends of the necklaces to more than one-half of an inch in the center. The beads are apparently true spheres, are

---

1 T. D. 41052.

highly polished and possess much luster. The articles are in different lengths, and range in price (wholesale) from $1.50 to $12.67 each. They were invoiced as mother-of-pearl beaded necklaces, entered as jewelry and assessed at 80 per centum ad valorem under paragraph 1428 of the Tariff Act of September 21, 1922, by the collector, who, in his report, described them as mother-of-pearl beaded necklaces with metal clasps.

While the collector did not say they were jewelry, the case is argued and disposed of here on the theory that they were so classified.

The only question is, were they correctly so classified? because if not, it is not denied that they are classifiable under paragraph 1403 of the same act as articles composed wholly or in chief value of beads, and dutiable at 60 per centum ad valorem.

Before the board but two witnesses testified—the importer's witness, a lady bookkeeper for a Chicago retail dealer in the imported article, and the Government's witness, an examiner at the port of Chicago, but who was not the examiner who examined and passed upon the merchandise in question. The importer's witness, strange to say, is relied upon by the Government, and the Government's witness is relied upon by the importer. The importer's witness testified that she understood the articles were mounted mother-of-pearl necklaces; that they carried these articles in the novelty department and called them mother-of-pearl necklaces; that she has sold some of them under that name; that these articles were sold in the jewelry department, and that they called them jewelry; that the things they call novelties are little glass beads and things of that style; that her company sold them as jewelry, but that she did not know what they were.

H. W. Gilmore, an examiner, testified that the article was a completed article ready for use as it is imported, and that he would pass it under paragraph 1403 as a beaded article, article in chief value of beads, and that that would be a correct classification, notwithstanding what the other examiner, who examined the article in controversy, had done.

The applicable part of paragraph 1428 is as follows:

Jewelry, commonly or commercially so known, finished or unfinished, of whatever material composed, valued above 20 cents per dozen pieces, 80 per centum ad valorem; * * *

Paragraph 1403 reads—

Spangles and beads, including bugles, but not including beads of ivory or imitation pearl beads and beads in imitation of precious or semiprecious stones, 35 per centum ad valorem; beads of ivory, 45 per centum ad valorem; fabrics and *articles* not ornamented with beads, spangles, or bugles, nor embroidered, tamboured, appliquéd, or scalloped, *composed wholly or in chief value of beads* or spangles other than imitation pearl beads and beads in imitation of precious or semiprecious stones, 60 per centum ad valorem; imitation pearl beads of all kinds and shapes, of whatever material composed, strung or loose, mounted or

unmounted, 60 per centum ad valorem; all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted, 45 per centum ad valorem: *Provided,* That no article composed wholly or in chief value of any of the foregoing beads or spangles shall pay duty at a less rate than is imposed in any paragraph of this Act upon such articles without such beads or spangles.    (Italics ours.)

The Board of General Appraisers sustained the protest of the importer and held that the goods should be classified under para graph 1403, upon the authority of the decision of this court in the case of *American Bead Co.* v. *United States,* 7 Ct. Cust. Appls. 18.

The applicable part of paragraph 356 of the act of 1913, the predecessor of paragraph 1428, which was under consideration in the American Bead Co. case, supra, was as follows:

Jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces, 60 per centum ad valorem;   *   *   *

The relevant parts of the two jewelry paragraphs are, therefore, identical, except that the words "finished or unfinished, of whatever material composed" have been inserted in the latter enactment, and the contention of the Government here rests upon the effect to be given to the words "of whatever material composed."    It contends that, by the addition of these words, Congress meant to include necklaces of mother-of-pearl regardless of the fact that they were not composed of any of the materials named in the definition of jewelry in the American Bead Co. case, supra.

So far as value is concerned, these necklaces are conceded to be within the paragraph.

The only question for decision in this case, therefore, is, did Congress, by the addition of the words "finished or unfinished, of whatever material composed," mean to include articles like the one in controversy?

In attempting to arrive at the intention of Congress, in this particular, it might be well to review the history of the jewelry paragraphs in various tariff acts.    A brief extract covering the pertinent parts of the jewelry paragraphs of previous tariff acts follows:

*Act, March 3, 1883, Schedule N.—Sundries:*

Jewelry of all kinds, 25 per centum ad valorem.

*Act, October 1, 1890, Par. 452:*

Jewelry: All articles, not elsewhere specially provided for in this Act composed of precious metals or imitations thereof, whether set with coral, jet, or pearls, or with diamonds, rubies, cameos, and other precious stones, or imitations thereof, or otherwise, and *which shall be known commercially as "jewelry,"* and cameos in frames, 50 per centum ad valorem.    (Italics ours.)

*Act, August 27, 1894, Par. 336:*

Jewelry: All articles, not specially provided for in this Act, *commercially known as "jewelry,"* and cameos in frames, 35 per centum ad valorem.    (Italics ours.)

*Act, July 24, 1897, Par. 434:*

Articles commonly known as jewelry, and parts thereof, finished or unfinished, not specially provided for in this Act, including precious stones set, pearls set or strung, and cameos in frames, 60 per centum ad valorem. (Italics ours.)

*Act, August 5, 1909, Par. 448:*

\* \* \* all articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished, including chain, mesh, and mesh bags and purses composed of gold or platinum, whether set or not set with diamonds, pearls, cameos, coral, or other precious or semiprecious stones, or imitations thereof, 60 per centum ad valorem. (Italics ours.)

It will be noticed that the act of 1883 provides for "jewelry," while the act of 1890 provides for articles "known commercially as 'jewelry'." The act of 1894 is for articles "commercially known as 'jewelry'." The act of 1897 provides for articles "commonly known as jewelry." The act of 1909 is for "articles commonly or commercially known as jewelry," which is followed in the act of 1913 by the substantially similar phrase "jewelry commonly or commercially so known."

The importation of jewelry has been a fruitful source of litigation, and the courts have been called upon to define the meaning of the word jewelry when used in a number of different phrases and with different modifying words. Jewelry, in the years gone, was defined as the handiwork of the jeweler. This was in the day of hand-made jewelry. The invention and use of jewelry making machinery has necessarily enlarged the definition of jewelry. Some of the dictionaries and lexicons, as well as some of the decisions of the courts, later defined it as articles for personal adornment composed of certain specific kinds of metals, stones, and imitations thereof.

It seems reasonable to conclude that Congress, after using the words "jewelry of all kinds" in the act of 1883, found the definition of jewelry applied to the paragraph excluded certain articles which it wished included therein. In the act of 1890 it modified jewelry by the use of the words "known commercially." Evidently not satisfied with this phrase, in the act of 1897 it changed the word "commercially" to "commonly," and in the act of 1909 it used both words "commonly" and "commercially." It followed this form in the act of 1913 and in the act of 1922.

In construing paragraph 356 of the act of 1913, in the American Bead Co. case, supra, this court defined jewelry as follows:

Jewelry as therein indicated and in the common conception, is composed of the precious metals or imitations thereof; or, of precious or semiprecious stones, pearls, or imitations thereof, or cameos, coral, or amber, including artificial, synthetic, or reconstructed pearls, rubies, or other precious stones, strung or set. \* \* \* Undoubtedly, therefore, the common acceptation of jewelry readily refers the mind to articles made from the precious metals and stones and imitations thereof.

In that case the articles which the Government sought to have the court hold to be jewelry were necklaces composed of beads of various materials other than those specified in the court's definition above.

It is conceded, we think, everywhere, that under the act of 1913, the importation before us now would have been declared to have been jewelry had it been composed of any of the materials specified in the definition above referred to. . That the article at hand possesses all the attributes and characteristics of jewelry except material is nowhere denied. *United States* v. *Goldberg's Sons et al.*, 3 Ct. Cust. Appls. 282; *United States* v. *Kraemer & Co. et al.*, 5 Ct. Cust. Appls. 470; *United States* v. *Cohn & Rosenberger,* 3 Ct. Cust. Appls. 273.

The necklaces in controversy in the American Bead Co. case, supra, were denied the jewelry classification not for the reason that they did not possess the general characteristics of jewelry, or that they were not used as jewelry, but because of the fact that they were composed of materials other than those designated in the definition agreed upon, and by reason of this fact it was said that, "in the common conception," they could not be known as jewelry.

The articles in that case were assessed for duty as articles commonly known as jewelry. There was no testimony taken in the case. The court held that the determination of the common meaning of a word was a matter of law and of judicial knowledge, and that, in the common acceptance of the term, articles that are made of materials other than those specified in their definition of jewelry could not be commonly known as jewelry. There was no proof as to how the articles were commercially known. Later, in the case of *United States* v. *Mandel Bros.,* 10 Ct. Cust. Appls. 44, this court said:

It is urged in the Government's brief that the presumption arising in favor of the legality of the collector's action would be that the assessment of the articles as jewelry establishes their status as such. But the same report shows that the articles are articles of bone. This being true, they could only be jewelry if commercially known as jewelry. The presumption is that a bone article, according to the rule laid down in the American Bead Co. case above quoted, is not commonly known as jewelry. This is not only true as a matter of law, but it carries with it the presumption that the commercial meaning is the same. (Swan *v.* Arthur, 103 U. S. 597 at p. 598.)

So it will be observed that this court, in the two cases cited, has held, under the act of 1913, that articles composed of materials other than those specified are presumed not to be commonly known as jewelry, and that the collector's assessment of merchandise under the jewelry paragraph carries with it no presumption of the finding of a meaning other than the common one.

Congress, by the use of the words "of whatever material composed," we think, meant to include within the jewelry paragraph just such articles as the one in controversy. We can attribute no other meaning to the language. We can not avoid the settled con-

viction that when Congress used the words "finished or unfinished, of whatever material composed," in the manner in which it did, and under the history and circumstances of their use, it meant a definite change in existing law.    This conviction is so impelling that we can not ignore its mandate.    If the words are to be given any meaning (and we must give them a meaning if possible), what meaning, other than that here ascribed, are we to give them?    It has been suggested that, possibly, Congress intended that the words "of whatever material composed" should modify "unfinished," and that it was "unfinished" jewelry "of whatever material composed" that they had in mind.    The reading of the paragraph and the application of the ordinary rules of grammatical construction forbid this conclusion. Besides, if "of whatever material composed" modifies "unfinished," it also modifies "finished."    If it modifies "finished," then it has reference to finished jewelry, and the contention that the words were intended to apply only to jewelry, which was in an incomplete state of manufacture, is defeated.    The modifying words "finished or unfinished" must have a subject.    Clearly, the subject is jewelry. If the words "finished or unfinished" modify jewelry, it follows that "of whatever material composed" must of necessity refer to the same subject—jewelry.    What kind of jewelry?    The unavoidable answer is that it is jewelry, finished or unfinished.

On March 9, 1916, this court held, under the act of 1913, that articles possessing all the attributes of jewelry except material were not jewelry.    This decision became the accepted law relative to the jewelry provision of the act of 1913, and was, no doubt, followed in administrative practice resulting in enormous quantities of merchandise possessing all the characteristics and uses of jewelry, except material, being relegated to the various paragraphs for component materials of chief value.    In the act of 1922 the same language was used, except with the addition of "finished or unfinished, of whatever material composed."    Clearly, Congress meant to say that if articles of personal adornment possessing all the attributes, characteristics, and uses of jewelry, finished or unfinished, and commonly or commercially known as such when composed of certain kinds of material, were imported into this country, that they should be assessed under paragraph 1428 as jewelry, even though they were composed of materials other than those which the courts had held to be requisite to constitute jewelry.

If the article to be assessed was commercially known as jewelry, and the proof so showed, clearly the addition, or omission, of the words "of whatever material composed" would have no effect. The American Bead Co. case, supra, held, which holding was in accord with abundant authority, that the court might consider evidence and dictionary definitions in assisting it in arriving at the

common meaning of words. In the case at bar, there was no adequate commercial testimony from which to determine that the article was commercially known as jewelry, nor was there any testimony of much assistance in determining as to whether the article was commonly regarded as jewelry or not. The collector's assessment of the necklaces under paragraph 1428 as jewelry, carries with it the presumption that he correctly so found.

There is no evidence, proof, or other circumstance in this case to rebut the presumption of correctness of the collector's finding that the necklaces in controversy were jewelry. The sample is in evidence, and an examination of it supports the collector's finding. That a presumption of correctness attaches to the official act of an officer has been a well-defined and consistently followed principle of law with the English-speaking people for so many years that its origin is obscured by its age. This rule of law has become the keystone of the arch of customs jurisprudence. The application of this wholesome rule of law to the classification of the collector has become such a fundamental part of the law applicable to the collection of customs that efficiency and expedition in administrative practice could not well exist without it.

In our view of the case the principle nowhere more aptly applies than to the actions of the collector of customs in classifying merchandise. The full force of its application wrongs no litigant with a just cause, and this court, believing in its wholesome influence, would be more inclined to enlarge its application than to restrict it.

Considering the history of the jewelry legislation and the importance attached to similar phrases by the courts in the past we are inclined to give the phrase "of whatever material composed" a very broad and inclusive meaning. In the case of *United States* v. *American Bead Co.*, 9 Ct. Cust. Appls. 193, in construing the phrase "of whatever material composed," when considering the classification of artificial flowers made of beads, this court said:

It is not, however, a necessary inference from this that the Congress has shown an intent to classify these according to use, but the purpose of making this classification all comprising is equally manifest. The language is as strong as could well be conceived. "Artificial and ornamental flowers, of whatever material composed," could not well be more inclusive.

In the American Bead Co. case, supra, last referred to, the merchandise consisted of imitation flowers, leaves, and stems, composed of metal wire, around which were woven colored silk threads, the petals being composed of various colored beads which were securely constructed on wire. The design was such that in size, color, form, and outline they resembled natural flowers. The importer contended, and the board held, that the merchandise was dutiable under paragraph 333, for articles composed wholly and in chief value of

beads (paragraph comparable with 1403, act of 1922).   It is clear, from a reading of the opinion, that if the words "of whatever material composed" had not been found in paragraph 347, the artificial-flower paragraph, the goods would have been held to have been in chief value of beads.   This court held that, on account of the phrase "of whatever material composed," Congress intended to invade the bead paragraph and place such imitation flowers, even though composed of beads, and in that respect not resembling flowers, in the artificial-flower paragraph.   It seems to us that this case is squarely in point.

This court, and other courts, having applied the test of material to the jewelry paragraphs in various previous tariff enactments, Congress, in the Tariff Act of 1922, we think, manifests an intention to eliminate the material test, leaving the inclusiveness of the paragraph to the question of what is commercially or commonly known as jewelry, regardless of its material.

It is asked what would be the court's definition of jewelry if the phrase "of whatever material composed" is given the meaning we here ascribe to it for classification purposes.   Jewelry, within the meaning of this paragraph, consists of articles which are commonly or commercially known to be jewelry.   It is either a matter of proof or judicial knowledge.   We do not mean to hold that the Board of General Appraisers, or this court, from judicial knowledge may not set aside the finding of the collector as to the common meaning of words, but we do hold that the board and this court may not do so, in construing paragraph 1428, merely because the article is not composed of the materials set out in the definition of jewelry in the American Bead Co. case first cited.

Proof of the common meaning of the name of the article and dictionary definitions, etc., if accepted by the court, and possibly the sample itself, or other matters of which the court might take judicial knowledge, might overcome the presumption of correctness attaching to the collector's finding that the article was jewelry and his assessment of the same under paragraph 1428.   Certainly sufficient proof of the commercial meaning would be binding upon the court, regardless of the form, color, material, or other characteristics of the article.

It is urged that giving to the phrase "of whatever material composed" the meaning we herein attribute to it strikes down the previous definition of this court and leaves the classifiers of goods without a yardstick or measure to apply to importations, and that velvet hair ribbons and such articles henceforth may be classified as jewelry.   In answer to this we submit that, if the collector ascertains that the article is either commercially or commonly known as jewelry when composed of certain kinds of materials, it is his duty to assess

it under the jewelry paragraph regardless of its material. If the protestant can overcome the presumption of correctness of the collector's finding, the trial tribunals are open for his doing so, and hair ribbons, if not commercially or commonly known to be jewelry, when composed of any of the various kinds of jewelry materials would be denied the jewelry classification.

When Congress used the word "jewelry" without modification, in previous tariff acts, the courts were required, of necessity, to make a definition and to consistently follow it. But when Congress modified jewelry by the words "commonly or commercially so known" and further broadened the provision by taking out of consideration entirely the question of material, a different responsibility came to the customs officials, to wit, that of determining whether or not the article was or was not commercially or commonly known as jewelry.

It is interesting to note that the dictionary definitions of jewelry have changed somewhat during the last several decades. This, however, is not surprising. Not only because of the use of jewelry-making machinery, but largely because of the changing tastes, fads, and fancies of the wearers of jewelry, the old conception of what constitutes jewelry vanishes and a new one takes its place. Obviously, the history of the legislation shows that Congress intended to depart from the meaning given to jewelry when it was a product of hand manufacture. It seems equally clear that the common conception of what jewelry is, in a sense may be changed by the manner in which it is sold and handled in large department stores, clothing stores, and elsewhere other than strictly in the sales shop of the jeweler.

The fact that Congress has modified the word "jewelry" so often in various ways, in its various tariff enactments, leads to the inevitable conclusion that it did so either with the purpose of requiring classification regardless of the dictionary and court definitions, or to meet the changes in the same.

Under the jewelry paragraph of the act of 1913, this court held cheap, imitation pearl beads, made of glass, filled with wax, with a metal clasp, to be jewelry. These would not have been regarded as jewelry under certain old time definitions because they were not the handiwork of the jeweler, were not sold in jewelry stores, and were not regarded as sufficiently precious. But Congress meant to include them in the acts of 1913 and 1922, and used the words "commonly or commercially so known" and specified a low minimum value, per dozen pieces, to bring about that result.

The collector's classification, which carries with it the presumption of correctness, not having been overcome, the Board of General Appraisers should have overruled the protest, and the judgment of the Board of General Appraisers is therefore *reversed*.

SMITH and BARBER, Judges, dissent.