United States *v.* Cohn & Rosenberger, Inc. (No. 3421) [1]

United States Court of Customs and Patent Appeals, November 2, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Puckhafer, Rode & Tompkins* (*Henry J. Rode* and *George J. Puckhafer* of counsel) for appellee.

[Oral argument October 8, 1931, by Mr. Folks and Mr. George J. Puckhafer]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

In this case the United States has appealed from the judgment of the United States Customs Court, First Division, which held certain merchandise referred to as "loose bone roses" to be properly dutiable as manufactures of bone, not specially provided for, at 25 per centum ad valorem under paragraph 1439 of the Tariff Act of 1922. The collector of customs classified the same for duty at 80 per centum ad valorem as unfinished jewelry under paragraph 1428 of the same act.

The importer protested the classification, making several claims, but here especially relies upon the claim that the merchandise is dutiable under paragraph 1439.

---

[1] T. D. 45259.

The pertinent portions of the two competing paragraphs are:

PAR. 1428. Jewelry, commonly or commercially so known, finished or unfinished, of whatever material composed, valued above 20 cents per dozen pieces, 80 per centum ad valorem;   *   *   *

PAR. 1439. Manufactures of bone,   *   *   *   or whalebone, or of which these substances or any of them is the component material of chief value, not specially provided for, 25 per centum ad valorem;   *   *   *

The United States Customs Court sustained the claim in the protest that the merchandise was dutiable under paragraph 1439 as manufactures of bone.

The merchandise consists of certain articles of bone, some of them resembling ivory, carved into the shapes of small roses with plain, smooth backs, in green and yellow.   The articles are about 1¼ inches long by a little over 1 inch wide, and one-half of 1 inch in thickness. The opened petals of the roses stand out from the unopened petals and form sharp projections.   The portion of the articles representing the stem is obviously shaped and designed for the purpose of being pierced for some kind of attachment.   The invoice shows them to be valued at $1.75 per dozen.

There was but one witness who testified in the trial below, Gerald Stern, and he was employed by the importer, appellee.   He stated, among other things, that some of the merchandise went into pendants which were suspended on a necklace chain;   that he had also seen them used for earrings and brooches;   that if a brooch or an earring or pendant was desired, the imported article would be drilled with a hole so as to receive the pin of· the brooch or a hook or suitable holder for the earring or pendant.

He also stated that he had seen this merchandise on the handles of umbrellas in Lord & Taylor's during the winter previous to October 7, 1930.   The importation was made on May 21, 1929.   The following is one of the questions and answers:

Q. Did you examine those umbrellas closely to determine whether those umbrellas are like these?—A. Yes, sir.

If there was any umbrella before the trial court, the record does not further show that fact.   It is probable that the witness meant to say that the roses on the umbrella were like those of the importation.

The Government in its brief points out that, from a physical examination of the article involved, it is obvious that the article is not adapted to be mounted on the handles of umbrellas, and states that the "carving of the petals are of such a nature that the sharp edges would destroy the glove or cut the hand; also the back of the rose is not fitted for the purpose of being attached to a handle. It is, therefore, not commercially adaptable for such use." To this argument the appellee replies that handles of all umbrellas are not designed to be held in the hand.

While the importer claims that it has proved by this witness that the article was used, at least in one instance, on an umbrella handle, this phase of the case is not pressed with much vigor here.

We conclude that, if the witness did see merchandise similar to that at bar on the handle of an umbrella, it was quite a fugitive use and not such a use as should control the classification of the merchandise. In our judgment the article is not commercially suitable for such use.

For the purpose of this case, therefore, we will regard the merchandise as used only, and suitable for use only, when drilled and fitted with pins or hangers, as brooches, pendants, and earrings. The present issue, therefore, is, Are articles of this value, manufactured from bone, which are designed and definitely committed to be worn as brooches, earrings and pendants, complete in themselves, with the exception of drilling the hole and attaching an appropriate fastening, dutiable under the provision for unfinished jewelry in paragraph 1428, or dutiable under paragraph 1439?

The court below, in its opinion, said:

In the case at bar these bone roses, while not semiprecious stones, are used in the manufacture of jewelry. They are not "dedicated to the making of a certain definite article of jewelry," nor is the merchandise "a certain definite article of jewelry in an incompleted or unfinished state." It is complete bone materials to be combined with other materials in the manufacture of various articles of jewelry.

"An article so far processed that it was definitely committed to the manufacture of a particular kind of jewelry, but not completed" has been held dutiable as unfinished jewelry. United States v. Cartier, 15 Ct. Cust. Appls. 334, T. D. 42493. The bone roses covered by the case at bar have not been "so far processed" as to be "definitely committed to the manufacture of a particular kind of jewelry, but not completed." They are complete in themselves, and are manufactured, by being combined with other parts composed of metal, into many kinds of jewelry, such as necklaces, pendants, brooches, earrings, etc. They are complete parts of jewelry which are combined with other parts to make complete articles of jewelry. (Italics ours with exception of "not.")

* * * * * * *

From the evidence and the authorities we are of opinion that these bone roses are not unfinished jewelry, but rather parts of jewelry to be combined with other parts to make various completed articles of jewelry. Parts of jewelry composed of bone, not being provided for specially in the tariff act, are dutiable as manufactures of bone * * *.

It is sometimes difficult to determine when an article is unfinished jewelry, a part of jewelry, or material suitable for the making of jewelry, and it is more difficult to lay down a hard and fast rule for the guidance of customs officials in classifying articles where a consideration of this question is involved. Some articles are parts of jewelry and, at the same time, unfinished jewelry.

In United States v. Cartier, 15 Ct. Cust. Appls. 334, T. D. 42493, which involved an unfinished bracelet which had been so far advanced as to dedicate it to the making of a bracelet alone and completely

finished except to mount the same with stones, the size of which had been provided for by the construction of the bracelet, this court said:

\* \* \* The article under discussion is unquestionably part of a platinum bracelet, and had Congress provided for parts of jewelry it might well be classified under that designation. \* \* \*

\*        \*        \*        \*        \*        \*        \*

Certainly a part of jewelry, such as that involved in this case, which has been so far advanced as to unmistakably indicate the particular article of jewelry which it will become when completed and which is commercially unfitted in its condition as imported for the making of anything else, is unfinished jewelry. \* \* \*

We can readily conceive, however, of parts of jewelry that could hardly be said to be unfinished jewelry. A very small and inconsequential though completely finished part of a definite article of jewelry might not be regarded, for tariff purposes, as the unfinished jewelry. The sill of a house is not an unfinished house, though it is part of the house.

In the case at bar the carved bone rose is a complete article, ready to wear, except for some means of attaching the same to the person or clothing of the wearer. It is finished with that exception, and the statute made specific reference to "jewelry \* \* \* finished or unfinished." A brooch, an earring or a pendant of the material at bar, finished, would clearly be jewelry. *United States* v. *Doragon Co.*, 13 Ct. Cust. Appls. 182, T. D. 41051; *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 190, T. D. 41052; *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T. D. 42219.

It is true that in the case of *United States* v. *Cartier, supra*, the court had in mind that the unfinished bracelet as imported was dedicated to the making of a single article of jewelry, to wit, a bracelet, and that in the case of *United States* v. *Wanamaker*, 14 Ct. Cust. Appls. 285, T. D. 41888, where rock crystal beads, graduated, faceted, cut, and strung with a clasp, but which had to be restrung and were frequently changed in form by the insertion of rondelles, etc., and made into other articles, were held not to be unfinished jewelry but were "semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry." In the latter case the court made mention of the fact that—

\* \* \* The exhibit before us is not dedicated to the making of a certain definite article of jewelry, "nor is it a certain definite article of jewelry in an incompleted or unfinished state." It was not a necklace in its imported condition and to finish it into a necklace would require more than adding to what has already been done. To finish it into a necklace all of the beads, in the order in which they are now strung, might be used, but the present temporary cord would have to be replaced with a different one.

In the case at bar it is conceded that the bone articles are not so manufactured as to be dedicated to the making of one particular article of jewelry such as an earring alone, but that they are so far

manufactured as to be dedicated to the making of earrings, brooches, and pendants, all three of which finished articles are conceded to be jewelry.

In *Konishi Kotakudo Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 355, T. D. 43798, this court, in speaking of the doctrine of exclusive use in determining when one thing was the manufacture of another, said: "This exclusive use is not necessarily confined to any one article, but may cover 'a particular kind or class of articles,'" and cited *A. H. Ringk* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769. If the language used in that case is applied to the case at bar, it would seem proper to hold that earrings, brooches, and pendants belong to "a particular kind or class" of jewelry articles.

While holding the imported merchandise to be unfinished jewelry, upon this record, is going a step further than is affirmatively held in any case cited, we believe that the unfinished-jewelry provision in paragraph 1428 is sufficiently broad to apply to the importation at bar. It would seem to result in an anomalous conclusion to hold that the bone rose at bar would be unfinished jewelry, if, when finished, it was worn as a brooch only, and refuse to hold the same to be unfinished jewelry because of the fact that, when finished, it was finished into and worn as a brooch, or a pendant, or an earring. Indeed, it is within the common knowledge that some brooches, with pins, are worn as pendants. The statute does not say "unfinished brooches," or "unfinished earrings" or "unfinished pendants." It provides for "unfinished jewelry" and, we think, aptly describes the merchandise at bar.

The protest should have been overruled, and the judgment of the United States Customs Court is *reversed*.