(C. D. 1094)

IGNAZ STRAUSS & CO., INC. *v*. UNITED STATES

United States Customs Court, First Division

(Decided March 22, 1948)

*John D. Rode* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Presiding Judge: This suit involves the proper classification of certain miniature leather articles, such as boxing gloves, sandals, baseball gloves, and huaraches, imported from Mexico. They were classified by the collector of customs at the port of New York as jewelry and assessed with duty at rates equivalent to 55 per centum ad valorem under paragraph 1527 (a), Tariff Act of 1930, as modified by the trade agreement with Mexico, T. D. 50797.

The plaintiff's principal claim is that the articles are properly dutiable at only 25 per centum ad valorem as manufactures of leather under paragraph 1531, as modified by the trade agreement with the United Kingdom, T. D. 49753.

The pertinent provisions of the above paragraphs are as follows:

PAR. 1527. (a) Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof):

   *        *        *        *        *        *        *

(2) all other, of whatever material composed, * * *.

PAR. 1531. * * * manufactures of leather, * * * or of which leather, * * * is the component material of chief value, not specially provided for, * * *.

The samples introduced in evidence as representative of the imported merchandise consisted of a pair of miniature leather sandals

about 1⅝ inches in length dangling from a short length of gray tape (exhibit 1). Another collective sample consisted of 2 pairs of miniature boxing gloves, one measuring about 2¾ inches in length with red-tape lacing extending so that the gloves dangled from a length of this tape, and the other sample in this exhibit measured about 2⅛ inches long, laced with and dangling from a purple tape (collective exhibit 2). The third sample was a single miniature baseball mitt measuring about 2¾ inches in length which dangled from a length of green tape (exhibit 3). The fourth sample (official sample) is a pair of miniature huaraches measuring about 1¾ inches in length. These also are tied together and dangle from what appears to be a short leather thong, blue on one side and gray on the other (collective exhibit 4).

There were illustrative samples introduced by Government witnesses to indicate the type of merchandise they handled which were claimed to be similar to the imported merchandise. One exhibit consisted of a card to which 7 samples were affixed. Four of these articles (a horse's head, dog's head, elephant, and owl) were made of leather, trimmed with fur, with slits in the back through which pins were inserted. The other 3 samples were manufactured completely of leather, one representing 3 books, another 3 bells, another 3 leaves, each dangling by leather thongs from a crosspiece, through the back of each of which a pin was inserted (illustrative exhibit A). A second illustrative exhibit consisted of a pair of all leather miniature boxing gloves, dangling on a leather thong from a leather crosspiece, with pin inserted in the back (illustrative exhibit B). The third illustrative sample consisted of a pair of leather fur-trimmed mittens pinned together at the back (illustrative exhibit C).

Plaintiff introduced the testimony of only one witness, for 22 years an employee of the plaintiff, who testified that the imported articles (exhibits 1, 2, 3, and 4) were never sold by him as jewelry but were sold exclusively for use on candy boxes and fruit baskets and also sold to the large five- and ten-cent stores. He further testified that he had seen such articles worn by children on the outside of their clothing, but never by adults.

The Government introduced the evidence of five witnesses. None of them had ever handled articles identical with those before us and the leather articles they dealt in (illustrative exhibits A, B, and C), while manufactured of leather, were much larger than the imported articles and some were trimmed with fur and all had pins attached as part of the article. None of the imported articles have a pin, nor have any of them openings or slits in the back indicating an intended use with a pin. Each of the imported articles dangled or was suspended from a length of colored tape.

The articles before us are finished articles of merchandise and are sold in the condition in which imported. There is no evidence that anything else is done to them after importation.

All defendant's witnesses, with one exception, were manufacturers of leather novelties. The single witness, Krosser, stated he was in the business of selling novelty jewelry. The witnesses were not too clear as to their definitions of jewelry. One witness, Friedman, stated that he manufactured articles similar to collective exhibit B and that he called all such products jewelry because they were sold to jewelry jobbers (R. 29). Another was of the opinion that anything that is worn for adornment was jewelry (R. 33). While some of these witnesses stated they had handled and seen articles like the imported merchandise used by adults on their clothing, they had never seen them so used without pins.

The Tariff Act of 1922 broadened the scope of the jewelry paragraph by adding the language "finished or unfinished, of whatever material composed" (paragraph 1428). As to this broad provision, our court of appeals said in *United States* v. *Doragon Co. et al.*, 13 Ct. Cust. Appls. 182, T. D. 41051:

* * * This is tantamount to a statement that if the article in question is such that it would be known as jewelry if it were not for the material of which it is composed, then the matter of the material is unimportant, and the article is properly classified as jewelry.

It does not follow that every article of personal adornment, such as a ribbon or a feather ornament, becomes jewelry. The article must be such as is commonly or commercially known as jewelry. This is a matter to be decided in accordance with the facts in each particular case.

The test seems to be whether or not the article was or was not commercially or commonly known as jewelry (*United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 190, 198, T. D. 41052). In the case of *United States* v. *Heinrich Herrmann & Weiss*, 30 C. C. P. A. 47, C. A. D. 213, our appellate court stated: "* * * before articles claimed to be jewelry, no matter of what materials they may be constructed, should be classified as was the involved merchandise, they must be so ornamental as to be commonly or commercially known as jewelry." This record does not establish as a fact that the imported articles answer to such a description.

The rule is well-established that in order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported (*Worthington* v. *Robbins*, 139 U. S. 337, 341, 35 L. ed. 181, 182). The samples of the imported articles are potent witnesses and an examination of them tends to support the contention of the plaintiff. While the illustrative exhibits introduced by the Government (illustrative

exhibits A, B, and C) are more pretentious and seemingly more expensive than the imported articles, and unlike the imported merchandise are obviously designed to be pinned to the clothing, it has not been established that such articles are, or ever have been held to be dutiable as jewelry, and we are not called upon in the present case to determine their dutiable status. All leather articles designed to be worn on or about the person are not jewelry. The court of appeals, affirming this court, held leather cuff buttons not to be jewelry in *United States* v. *Heinrich Herrmann & Weiss, supra.*

In *American Import Co.* v. *United States,* Abstract 50875, the merchandise before us was miniature boxing gloves almost identical in size, design, and construction with collective exhibit 2 in the case at bar. In that case we held such articles not to be jewelry but to be properly dutiable as manufactures of leather.

Upon the present record, we are of opinion that the presumption of correctness attaching to the collector's classification has been overcome and that the testimony of defendant's witnesses does not sustain its contention. The articles at bar are not commonly or commercially known as jewelry and we accordingly hold the merchandise to be properly dutiable as manufactures of leather at 25 per centum under paragraph 1531 of the Tariff Act of 1930, as modified by T. D. 49753.

The protest is sustained and judgment will issue accordingly.