## DENNY et al. v. AUTOMOBILE INS. CO. OF HARTFORD, CONN.

No. 7281.

United States District Court
W. D. Missouri, W. D.

July 8, 1952.

David Skeer (of Barnett & Skeer), Kansas City, Mo., for plaintiffs.

Douglas Stripp (of Watson, Ess, Whittaker, Marshall & Enggas), Kansas City, Mo., for defendant.

REEVES, Chief Judge.

The only question for decision in this case is whether loose diamonds should be considered as jewelry within the provisions of a policy or contract of insurance issued by defendant to the plaintiffs.

It is conceded that 176 loose diamonds (that is, unset or unmounted) were stolen from the plaintiffs while the policy or contract of insurance issued by the defendant in favor of the plaintiffs was in full force and effect. Applicable and pertinent provisions of the policy designated as "Missouri Personal Property Floater Policy" are as follows:

"The Automobile Insurance Company
of Hartford, Connecticut

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

in consideration of the stipulations
and premium hereafter mentioned
does insure
(Space for attachment of rider)

........................Lewis E. Denny, Jr. ........................
Name of Assured

........................641 E. Gregory Blvd. Kansas City, Missouri
Address

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

on the following described property:

1.  Personal property owned, used or worn by the persons in whose name this policy is issued, hereinafter called the Assured, and members of the Assured's family of the same household, while in all situations, except as hereinafter provided.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

2.  \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Amounts of Insurance

3.  Insurance attaches only with respect to those items in this paragraph for which an amount is shown and only for such amount.

Item (a)$......... On unscheduled personal property, except as hereinafter provided.

Item (b)$......... On personal jewelry, watches, furs, fine arts and other property as per schedules attached hereto. Each item considered separately insured.

Item (c)$......... On unscheduled personal jewelry, watches and furs in addition to the amount of $250.00 provided in paragraph 5(b), against fire and lightning only.

4.  \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Limitations

5.  (a)   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"(b)   As respects any one loss of unscheduled jewelry, watches and furs, the Company shall not be liable for more than $250.00 unless the loss is covered under Item (c) Paragraph 3, in which event the Company's liability for such loss is limited to the amount stated therein; \*   \*   \*".

Upon these provisions of the policy it is the defendant's contention that the loose diamonds were jewelry within the purview of the policy and that since same were not scheduled as provided for the defendant's coverage of jewelry, then the loss or indemnity payable to the plaintiff was limited to $250 and no more. In support of its contention, the defendant says and so establishes by its proof, that the broker

through whom the plaintiffs·obtained their insurance discussed with the plaintiffs the matter of the loose diamonds and both were of the opinion (by innuendo) that the policy did not cover loose diamonds, unless as provided under paragraph 3, Item (c) above set out. There was no controversy or dispute in the evidence but that the diamonds which constitute the basis of the action were loose. They had been dismounted from a bracelet, which, admittedly, was jewelry within the purview of the policy, and when thus dismounted and carried as loose stones it became a legal question as to whether the policy covered them as "unscheduled personal property." It is further admitted that, by an amendment, the insurance on unscheduled personal property was increased to $15,000.

As stated, there is no controversy but that the diamonds stolen from the plaintiffs aggregated in number, 176, and that they had a value of $11,020. The defendant was notified of the loss and plaintiff made claim on November 7, 1951, and now asks judgment in the full amount of the loss, with interest at 6% from and after December 7, 1951. The plaintiffs also claim attorney's fees, and for alleged vexatious refusal and failure on the part of the defendant to pay.

1. Able counsel on both sides tender dictionary definitions as an aid in determining whether loose diamonds were and are jewelry or whether they were not.

In the case of Robbins v. Robertson, Collector, 33 F. 709, 710, the Circuit Court for the Southern District of New York, on January 19, 1888, had before it the meaning of the word "jewelry." Judge Lacombe, in his instructions to the jury said:

"* * * what is jewelry? The word 'jewelry' is generally used as including articles of personal adornment, and the word further imports that the articles are of value in the community where they are used. * * * The articles of value used for personal adornment in our civilization are and for centuries have been the precious metals,—gold and silver, to which, I think, platina is now generally added,

—and what are known as precious stones,—the diamond, sapphire, ruby, etc. *Articles manufactured from those for the purpose of personal adornment are known, as the witnesses on the stand told you, as articles of jewelry, and such testimony is accordant with your own knowledge as to what is the ordinary use of the term 'jewelry.'* (Emphasis mine.)

The Court of Appeals for the Second Circuit in the case of Citroen v. United States, 166 F. 693, had before it, in January, 1909, practically an identical question. As a coincidence, Judge Lacombe had tried the case in the district or the then Circuit Court, and was reversed by the Court of Appeals. In discussing the subject of Jewelry, the court, 166 F. loc. cit. 695, among other things, said:

"* * * Loose pearls bear no mark by means of which it can be determined whether they have been strung or set as jewelry, * * *."

Again, loc. cit. 697, the court said in construing the Act of Congress:

"* * * the intent was to provide for all pearls in the two paragraphs— 434, covering pearls *which had become jewelry by being set or strung in pins, rings, necklaces, etc.* (Emphasis mine.) and 436, covering all other pearls. The words 'natural state' may have been intended to distinguish the pearls from those in the quasi artificial state to which they had been translated by *becoming jewelry* (Emphasis mine.) or parts thereof."

2. Words and Phrases, Volume 23, in giving judicial definition of Jewels and Jewelry cites the case of Commonwealth v. Glover, 132 Ky. 588, 116 S.W. 769, 774, as follows:

"The word 'jewelry', as used by a revenue agent in the statement filed by him of property belonging to a person omitted from taxation, includes the rings, pins, and other ornaments worn by the taxpayer, his wife, and other members of his family dependent upon him and for whose taxes he is responsible."

114

Counsel on both sides have discussed the case of Cavendish v. Cavendish, 1 Brown's Ch. 409. A digest of this opinion in Words and Phrases, supra, is as follows:

"Jewels are valuable stones set and prepared for wear, and differ from gems in that the latter are kept for curiosity only."

 Adverting to the dictionary definition of Gems and Jewels, the following is noted from Webster's Unabridged Dictionary 1941:

"Gem, Jewel: In modern usage Gem more frequently suggests a precious stone as cut or polished; Jewel, a precious stone as set and worn for ornament."

Both the dictionary definition, as well as the judicial discussion of the meaning of the word "Jewelry" point with certitude to the fact that the word "Jewelry" does not include loose or unset diamonds and that the provisions of the policy requiring scheduling of jewelry would not apply. It is true that some insurance carriers define "Jewelry" as follows:

"Jewelry, sterling silver and furs, which words for the purpose of this insurance means jewelry, watches, necklaces, bracelets, gems, precious and semiprecious stones, articles of gold, platinum and sterling silver, furs, and articles containing fur which represents their principal value. * * *."

An examination, however, of the policy in suit does not disclose such a limitation. Under such circumstances the policy must be treated as containing words in their usual and ordinarily accepted sense and meaning.

3. It is the contention of counsel for defendant that the conversation between the broker and the plaintiffs concerning the loose diamonds and the relation of the policy to them would estop plaintiffs, or rather, such conversation would be revealing to the court as to the interpretation put by the plaintiffs upon their policy. In the first place, the broker with whom the insured carried on such conversation is, according to the Missouri law, agent for the insured. The conversation,

therefore, was carried on between a principal and agent. Moreover, the question was not one of fact but one of law, and according to all of the authorities, the conception that the insured and his agent may have had as to what the law was would not relieve the defendant of liability if in fact, as the court must hold, the loose stones were not jewelry, and were under the coverage of "Unscheduled personal property."

In view of the foregoing, the issues should be found for the plaintiffs and that they have judgment as prayed in their complaint.

4. In view of the facts in the case and the controversy as to whether the loose diamonds were in fact jewelry, and the circumstances that some insurance companies have specified that loose diamonds should be treated as jewelry, the plaintiffs are not entitled to damages for claimed vexatious delay in its refusal to pay, and as above stated the judgment will be in the amount as above stated and no more.

The plaintiffs have submitted requested Findings of Fact. Such proposed findings appear to be responsive to the evidence and will be given. Such requested Findings of Fact also state Conclusions of Law.