Morris **FRIEDMAN** and Carson M. Simon & Company

v.

**UNITED STATES.**

**C.D. 3283; Protests 62/9796–92026 etc.**

United States Customs Court,
First Division.

Feb. 13, 1968.

Allerton deC. Tompkins, New York City, for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen., (Brian S. Goldstein, New York City, trial attorney), for defendant.

Before WATSON and MALETZ, Judges.

MALETZ, Judge:

Merchandise, which is described on the invoices as "Kissing pins," "Tyrolean pins," and "Angel pins," was assessed by the collector with duty at the rate of 55 percent ad valorem, as "jewelry, commonly or commercially so known * * * of whatever material composed, valued above 20 cents per dozen pieces" under paragraph 1527(a) (2) of the Tariff Act of 1930, as modified by T.D. 51802. Plaintiffs filed protests, which were consolidated for purposes of trial, claiming proper classification of the merchandise under paragraph 412 of the act, as modified by T.D. 52373, as "Manufactures of wood * * * not specially provided for," dutiable at a rate of only 16⅔ percent ad valorem.

The parties have stipulated that the imported articles are in chief value of wood, and the issue thus narrowed is whether their classification by the collector under the jewelry provisions of paragraph 1527 was appropriate.

Relevant are the following tariff provisions:

Paragraph 1527(a) (2) of the Tariff Act of 1930, as modified by T.D. 51802:

Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof):

\* \* \* \* \* \*

(2) All other, of whatever material composed, valued above 20 cents per dozen pieces * * * 55% ad val., * * *

Paragraph 412, Tariff Act of 1930, as modified by T.D. 52373:

Manufactures of wood or bark, or of which wood or bark is the component

material of chief value, not specially provided for:

\*   \*   \*   \*   \*   \*

Other (except   \*   \*   \*)   \*   \*   \*
16⅔% ad val.

Representative samples of the merchandise in evidence are approximately 1 inch in height and portray human figures in brightly painted colors. A metal chain is attached at one end to the head portion of each by means of a small nail embedded therein, while a metal safety pin is fastened to the other end.

Only one witness testified, the vice president and general manager in charge of buying and selling for the firm for whose account the merchandise was imported. In summary, his testimony, which was presented on behalf of the plaintiffs, was to the following effect: The articles are fashioned from scrap lumber by Italian peasant families. In the process, the wooden parts are turned on a lathe, glued together, and then painted. They are sold at mountain and seaside resort areas on both coasts of this country to gift, resort, and beachwear shops, some of which sell Indian bracelets and similar items. They are primarily used on straw hats, bags, and beachwear, and as "tie-ons" on gift packaging; they have also been used as decorations on children's coats and on the zipper pulls of ski jackets. The vast majority are sold for the winter and Christmas seasons. They are not sold to the jewelry trade, and are never referred to or sold as jewelry. It was the opinion of the witness that the articles are novelty items because they are inexpensive, lack artistic or imaginative creation, and have a largely seasonal appeal.

The evidence introduced by plaintiffs having remained essentially unimpeached and totally unrebutted by the defendant, the problem is to determine whether it is sufficient to overcome the presumptively correct classification of the collector.

■ The phrase "commonly or commercially so known," as it applies to articles of jewelry, first appeared in paragraph 448 of the Tariff Act of 1909 and was subsequently retained in the 1913, 1922, and 1930 Acts.[1] The jewelry paragraph of the 1897 Act was expressly limited to "Articles commonly known as jewelry"; the addition in the later acts of the disjunctive language "or commercially so known" was held to extend the scope of the paragraph "to everything which the commercial and popular understanding denominates and classifies as jewelry." United States v. Goldberg's Sons et al., 3 Ct.Cust.App. 282, 285, T.D. 32573 (1912). While proof of a commercial designation was thereby considered applicable, it is, nevertheless, a matter of settled judicial construction that the collector's assessment under the jewelry paragraph will raise a presumption of a finding of common meaning only. United States v. International Forwarding Co., 13 Ct.Cust.App. 190, 194, T.D. 41052 (1925); United States v. Mandel Bros., 10 Ct.Cust.App. 44, T.D. 38294 (1920); American Bead Co. v. United States, 7 Ct.Cust.App. 18, T.D. 36259 (1916). This is to say that in construing the jewelry paragraph, the basic rule applies that the commercial meaning will be presumed to be the same as the common meaning and that the burden of establishing a commercial meaning distinct from the common meaning is upon the party asserting it. E. g., Tower & Sons v. United States, 11 Ct. Cust.App. 261, T.D. 39080 (1922); Floral Arts Studio et al. v. United States, 46 CCPA 21, 23, C.A.D. 690 (1958).

In the present case, neither party has made claim to the existence of a commercial designation, leaving for determination the question, are the importations within the common meaning of the tariff term "jewelry"?

■ Prior to the 1922 Tariff Act, the common meaning of the term "jewelry" was limited to articles consisting of certain precious or semi-precious mate-

1. Paragraphs 356, 428 and 1527, respectively.

rials (or imitations thereof) that were marketed through jewelry stores. E. g., American Bead Co. v. United States, supra, 7 Ct.Cust.App. at 28–29. However, in the 1922 and 1930 Tariff Acts, the jewelry paragraph was broadened by addition of the language "of whatever material composed." As a consequence, the common meaning of the term "jewelry" was held to include any article of personal adornment so ornamental as to be commonly or commercially known as jewelry, and irrespective of the merchandising medium through which it is sold. United States v. Heinrich Herrmann & Weiss, 30 CCPA 47, C.A.D. 213 (1942); United States v. Ignaz Strauss & Co., Inc., 37 CCPA 32, C.A.D. 415 (1949). (In this respect, the statutory language and its judicial construction impart a broader scope to the term "jewelry" than the standard dictionary definitions.) [2]

■ Against this background, the record establishes that the merchandise here involved is not offered to the jewelry trade *per se* and that it is never traded in or referred to as jewelry. Since it is presumed that the commercial and common meaning of a term coincide, evidence of the trade denomination of an article or its commercial treatment is a factor to guide the court on a question of common meaning. Nylos Trading Company v. United States, 37 CCPA 71, 73, C.A.D. 422 (1949). Such evidence is particularly significant in jewelry cases. E. g., United States v. International Forwarding Co., supra, 13 Ct.Cust.App. at 198;

Jesus M. Altiere v. United States, 36 Cust.Ct. 448, Abstract 59956 (1956); Seaboard Import Co., Inc. v. United States, 35 Cust.Ct. 248, Abstract 59302 (1955).[3] The record also establishes that this type of merchandise is exclusively sold at resort areas and is primarily used in connection with casual attire and/or accessories thereto. The normal use to which an article is put is likewise of great significance in identifying what it is. United States v. Quon Quon Company, 46 CCPA 70, 73, C.A.D. 699 (1959). Finally, the samples themselves, always a source of relevant evidence in such circumstances, appear as rather crudely constructed, gayly decorated, items possessing more novelty than ornamental appeal.[4]

■ In short, the evidence as to the manner in which the articles in question are traded and the uses to which they are put, together with their physical appearance, impels the conclusion that they do not come within the common meaning of the term "jewelry" in paragraph 1527(a) (2). Therefore, based upon the agreement of the parties as to the component material of chief value, we hold the merchandise to be properly dutiable as manufactures of wood, not specially provided for, under paragraph 412, as modified, at a rate of 16⅔ percent ad valorem. The protests are sustained and judgment will issue accordingly.

WATSON, J., concurring.

2. E.g., Webster's New International Dictionary, Second Edition, Unabridged (1934):

*jewelry*—Jewels collectively; personal ornaments, as badges, bracelets, brooches, pendants, set or studded with jewels; as a bride's *jewelry;* fraternity *jewelry;* hence, pieces of precious metals, crystal, etc., shaped and worn for adornment.

E.g., Funk & Wagnalls New Standard Dictionary of the English Language (1937 ed.):

*jewelry*—Jewels taken collectively; precious stones in mountings; gems or ornaments prepared or sold by jewelers; jewelers' work.

3. It is quite true, as defendant points out, that the importers of the present articles are not engaged in the jewelry trade and that their witness was not conversant with that trade. But this only tends to underscore the fact that the articles do not travel the commercial avenues as jewelry.

4. The courts have often held that not every article of personal adornment is jewelry. United States v. Doragon Co. et al., 13 Ct.Cust.App. 182, T.D. 41051 (1925); United States v. Ignaz Strauss & Co., Inc., supra, 37 CCPA 32; United States v. Heinrich Herrmann & Weiss, supra, 30 CCPA 47.