This case involves a dispute between Appellant, George Tanner, and his daughter, Mary Ann Winfield, Appellee, over the ownership of certain personal property. The categories of properties involved are: (1) certain pieces of expensive jewelry purchased by Mrs. Hazel Tanner, now deceased, who was the wife of Appellant and the mother of Appellee; (2) certain furs which belonged to Mrs. Tanner; and (3) various items of personalty which Appellee contends either belonged to her prior to her mother's death or were left to her under her mother's Will. Appellee alleged by way of counterclaim that the items in the last category were converted by Tanner's taking of these items to Atlanta and selling them at auction.
The trial Court heard the evidence ore tenus and held that the jewelry and furs belonged to Appellee and awarded a money judgment of $4,100 in favor of Mary Ann Winfield on her counterclaim. We affirm. *Page 652 
On several occasions during Hazel Tanner's life, she made purchases of expensive pieces of jewelry and at least two purchases of unmounted diamonds. One of the unmounted diamonds was set to wear prior to Mrs. Tanner's death; however, the other diamond was never mounted during her life. Extensive testimony was received pertaining to the manner in which the jewelry was acquired, where and when it was purchased, who bought the jewelry, and the prices paid. Included in the jewelry were a diamond brooch and two rings purchased in Atlanta for $11,500 and $10,000, respectively; a diamond ring purchased in Florida for approximately $6,000; and certain pieces of jewelry purchased at Brombergs in Birmingham. Additionally, Mrs. Tanner purchased one of the unmounted diamonds in Florida and one of them in Birmingham.
Mrs. Tanner died on April 6, 1974, leaving a Will. The pertinent portions of her Will provided for the following disposition of property:
"ITEM II
 "I give and bequeath to my daughter, Mary Ann Tanner, all of my personal jewelry, antique pins, rings, bracelets, watches; all of my handpainted antique china, including plates, vases, cake sets, dessert sets, lamps, odd pieces, trays, bowls, bric-a-brac, dresser sets; also all of my antique china, including Dessert Sets of Limoges, Dinner Sets of Limoges, vases, odd plates, Figurines and bric-a-brac; all of my cut glass sets, and all odd pieces of cut glass; all crystal sets and odd pieces, including crystal sconces, punch bowl and cups and chandeliers; all of my sterling silver including odd pieces, serving pieces, trays, reflectors, epergne, vases; one set (service for 12) flatware sterling and serving pieces; one service for 12 Gold Dirilyte flatware and serving pieces; one sterling 7 piece silver service and candelabras; one 25 piece Gold Royal China dessert set; 2 pink lusters; one pair gold leaf candelabras; one Garland of Roses picture frame; 4 French Bisque Figurines; 2 French China Figurines; and Baby Grand Piano.
"ITEM III
 "All the rest, residue and remainder of my property of any kind, nature and character whatsoever and wheresoever situated, I give, devise and bequeath unto my husband, [George] Tanner, all to be his absolutely."
After Mrs. Tanner's death, Appellant placed all of the jewelry involved in this action in a safety deposit box at First National Bank in Birmingham. On June 26, 1974, Appellant, at his daughter's request, took the jewelry from the safety deposit box and delivered the jewelry to his daughter, the Appellee. She immediately placed the jewelry in a safety deposit box which she had opened that day.
Also, after Mrs. Tanner's death, several of the furs, which she had owned, were put into storage. It is Appellee's contention that these furs were given to her by her father. Appellant contends that he never gave the furs to anyone, but he did allow the furs to be placed in storage.
Two years after Mrs. Tanner's death, Appellant filed this action seeking to recover the jewelry and the furs. Appellee answered, and counterclaimed for conversion of certain items of personalty, which, as noted earlier, she claims belonged to her and were sold by her father at an auction in Atlanta. Other pertinent facts appear in the opinion.
This is an ore tenus case and the decree below is favored with a presumption of correctness and the trial Court's finding will not be disturbed on appeal unless plainly erroneous or manifestly unjust. White v. White, 350 So.2d 326 (Ala. 1977). In the present case, the trial Court specifically found that "a substantial and significant portion of Plaintiff's [Appellant's] testimony is incredible to the Court." Additionally, the trial Judge noted that he believed Mrs. Winfield's testimony. These findings are indeed significant when viewed in light of the underlying rationale of the ore tenus rule: Where the witnesses are examined orally before the court and the judge has *Page 653 
the benefit of observing their manner and demeanor, he has the better opportunity to pass upon the credibility of the testimony. Stevens v. Thompson, 279 Ala. 232, 184 So.2d 140
(1966).
We have reviewed the record carefully and have found that, although Appellant vigorously contends that he never gave the furs in question to his daughter, but only allowed the furs to be stored, there is ample evidence to support the trial Court's finding that the furs were delivered to Appellee by Appellant with the requisite donative intent so as to constitute a gift. Similarly, there is considerable evidence to support the trial Court's finding that certain items of personal property sold by Appellant in Atlanta were items of property belonging to Appellee. This would support that portion of the decree allowing Appellee to recover money damages from Appellant.
A large portion of Appellant's brief is devoted to his argument that the jewelry involved in this case was "investment jewelry" and not "personal jewelry," passing to Appellee under the Will of Mrs. Tanner. Apparently, Appellant's contention is that the jewelry in question was purchased by Mrs. Tanner and himself solely for investment.
Appellant argues that there is substantial evidence that Mrs. Tanner never wore any of the jewelry involved in this case and that the jewelry was bought for investment purposes. Admittedly, some of the definitions of jewelry found in the cases seem to require that, in order to be considered jewelry, the item in question must be prepared or set for wear. See, e.g., Dantzig v. Universal Car Loading Co., 17 Misc.2d 928,185 N.Y.S.2d 718 (1959) (articles of jewelry defined as articles of adornment); Cavendish v. Cavendish, 1 Brown's C.C. 467 (jewels are valuable stones set for wear). We have found no case where a court specifically held that, in order to be jewelry, the item must actually be worn by some person. Several of the cases cited by Appellant, discussing the definition of jewelry, have been tariff cases. See Friedman v. U.S., 280 F. Supp. 464
(Cust.Ct. 1968); Robbins v. Robertson, 33 F. 709 (Cir.Ct.N Y 1888). If Appellant's contention is accepted, no item imported into this country could be classified as jewelry unless it had been previously worn. Similarly, none of the cases cited by Appellant are cases distinguishing between personal jewelry and jewelry purchased for investment. Appellant himself refers to the items in question as "investment jewelry"; therefore, the cases defining jewelry add little to his theory that the items in question were purchased solely for investment.
Appellant's own testimony shows that the jewelry was purchased by Mrs. Tanner alone; that she used money out of her own banking account; and that the accounts at the various jewelry stores were in her name. Furthermore, the record discloses that, while Mr. Tanner knew that his wife purchased jewelry from time to time, he was unaware of the specific details as to where and when the jewelry was purchased and how much was spent on the individual purchases. We think the testimony by Appellant supports the trial Court in its finding against him. We note that, while the trial Court may have been justified in finding on the facts presented in this case that the jewelry in question was the personal jewelry of Mrs. Tanner (passing under her Will to her daughter, Mary Ann Winfield), there may be other cases where the facts are such as to recognize a distinction in "personal jewelry" and "jewelry purchased for investment."
As a concluding note, Appellant cites the case of Denny v.Automobile Ins. Co. of Hartford, Conn., 106 F. Supp. 111
(W.D.Mo. 1952), which held that loose stones were not "jewelry" within a personal property floater provision in an insurance contract requiring scheduling of jewelry, but were unscheduled personal property. This interpretation would have allowed Plaintiffs in that case to recover the full value of a number of loose stones stolen from their home.
If the Denny holding — defining stones set for wear as jewelry, and loose stones as personal property — were accepted by this Court, we would be constrained to agree that the loose stone purchased by Mrs. Tanner, *Page 654 
and which was never mounted, would be considered personal property passing to Mr. Tanner under the residuary clause of Mrs. Tanner's Will. On appeal, however, this case was reversed.Automobile Ins. Co. of Hartford, Conn. v. Denny, 206 F.2d 401
(8th Cir. 1953). In reversing the District Court, the 8th Circuit Court of Appeals stated:
 "Counsel have supplied us with definitions of the word `jewelry' taken from various dictionaries, and have cited cases thought to be indicative of the meaning of the word. Since we are convinced that in the policy in suit the word `jewelry' was used in a broad sense and included mounted and dismounted diamonds, there is no point in discussing the cases referred to by counsel, none of which requires a different conclusion."
Likewise, we are of the opinion that, based on the evidence presented in this case, the trial Court was justified in a broad reading of the term "personal jewelry" used in Mrs. Tanner's Will; and we uphold the trial Court in including the loose stone as an article of personal jewelry, passing to Appellee under the Will. This is not to say that a Will could not specifically distinguish between mounted jewelry and unmounted gems or stones.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.